Argued and submitted July 15, affirmed October 7, 1998

In the Matter of the Medical Treatment
Dispute of Alyce Langley, Claimant.

ROSEBURG FOREST PRODUCTS,
*Petitioner,*

*v.*

Alyce LANGLEY
and Department of Consumer & Business Services,
*Respondents.*

(H97-043; CA A98326)

965 P2d 477

Cynthia A. Wiens argued the cause for petitioner. With her on the brief was Cowling, Heysell, Plouse & Ingalls.

Dale C. Johnson argued the cause for respondent Alyce Langley. On the brief were Christine I. Jensen and Malagon, Moore & Jensen.

Denise Fjordbeck, Assistant Attorney General, argued the cause for respondent Department of Consumer and Business Services. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

Employer seeks review of an order of the Workers' Compensation Division in which the Director concluded that certain medical services provided in 1996 were diagnostic services for a compensable injury suffered by claimant in 1984. Employer contends that the Director did not have jurisdiction over the medical services claim because, in a separate proceeding before the Workers' Compensation Board, that claim had been accompanied by a claim for compensation for a combined or consequential condition. We conclude that the Director did have jurisdiction over the medical services claim and affirm.

Claimant suffered a compensable lumbosacral strain in 1984 while she was working for employer as a custodian. The claim was closed in 1988. Between 1986 and 1994, claimant underwent a series of diagnostic tests to determine whether her injury was causing the radiating pain that claimant was experiencing in her left lower extremity and foot. None of the tests revealed either disc herniation or nerve root compression, conditions that could have been linked to the original injury. Employer nevertheless paid for those tests. In 1994, claimant's treating physician informed employer that claimant was "medically stationary and there are no further diagnostic or curative procedures possible." Subsequently, in 1996, the same physician ordered a CT scan and myelogram, because claimant continued to complain of the radiating pain. Again, there was no sign of disc herniation or nerve root compression. There was, however, evidence of a degenerative disc condition. Claimant's physician administered epidural steroids as treatment for the disc degeneration. Claimant submitted a claim for medical services to employer. Employer denied the claim, stating:

> "Over the last few months, you have been receiving treatment for low back problems. It is the position of [Roseburg Forest Products] that the current treatment received is not a result of your industrial injury occurring over eleven years ago.
>
> "Your current claim for treatment is denied."

Claimant filed challenges to the denial with both the Workers' Compensation Board and the Workers' Compensation Division of the Department of Consumer and Business Services (the Director). The Board hearing took place on January 29, 1997, and the parties submitted written closing arguments on March 24, 1997. The record was closed on April 3, 1997, and the administrative law judge (ALJ) issued an opinion and order on May 5, 1997. The hearing with the Director took place on April 4, 1997, and the ALJ in that hearing issued a proposed and final contested case hearing order on April 21, 1997.

In the hearing before the Board, claimant argued that the medical services were directed at the earlier compensable injury *and* that her current condition was a compensable result of the earlier injury, so that both the diagnostic tests and the epidural steroid injections were compensable.[1] The ALJ in that proceeding concluded, and the Board affirmed, that claimant's earlier compensable injury was not the major contributing cause of her current condition and, consequently, that employer was not required to pay for treatment of that condition.[2] The ALJ declined to address the medical services claim, stating:

> "It is my opinion that new legislation has clearly granted *exclusive* jurisdiction over this matter to the Director[;] therefore I do not address the issue of whether certain medical treatment billings should be paid."

(Emphasis in original.) The record does not indicate that employer sought Board review of the ALJ's refusal to address the medical services claim.[3]

---

[1] According to the opinion and order issued by the ALJ who heard the case on behalf of the Board, employer had argued that the medical services claim was "exclusively within the jurisdiction of the Director of the Department of Consumer [and] Business Services" and that the Board had no jurisdiction to address it. Neither party has challenged that statement. Claimant does not argue that the position taken by employer before the Board estops employer from asserting, as it does here, that the Director did not have jurisdiction over the claim, so we do not consider that issue.

[2] Claimant has not sought review of that decision.

[3] Given employer's position on the issue at the hearing, *see* note 1, it presumably could not have done so.

At the hearing before the Director, the sole issue was whether the diagnostic services were related to claimant's original compensable injury. Employer contended that the ongoing compensability proceedings before the Board stripped the Division of jurisdiction over the medical services claim. The ALJ in that proceeding (a different ALJ from the one conducting the Board hearing) disagreed, concluding that the Director had exclusive jurisdiction over the claim, because employer's denial letter

> "did not deny the compensability of any condition. Rather, the letter denied *treatment* on the basis that the treatment was not related to the accepted condition."

(Emphasis in original.) In reaching that decision, the ALJ relied on our decision in *SAIF v. Shipley*, 147 Or App 26, 934 P2d 611 (1997). The Supreme Court has since affirmed our decision. *SAIF v. Shipley*, 326 Or 557, 955 P2d 244 (1998). On June 19, 1997, the Director issued a final order affirming the ALJ's decision. Employer seeks review of that order.

On review, employer argues that the Director was stripped of jurisdiction over the medical services claim once that claim was combined with a claim for compensation for a new condition. Employer further argues that, even if the issue were properly before the Director, the wrong standard was applied in determining whether the services were covered by employer's obligation to pay for services related to the original compensable injury.

Our resolution of the jurisdictional issue requires us to examine two separate statutes, ORS 656.245[4] and ORS

---

[4] ORS 656.245 provides, in pertinent part:

"(1)(a) For every compensable injury, the insurer or the self-insured employer shall cause to be provided medical services for conditions caused in material part by the injury for such period as the nature of the injury or the process of the recovery requires, subject to the limitations in ORS 656.225, including such medical services as may be required after a determination of permanent disability. In addition, for consequential and combined conditions described in ORS 656.005 (7), the insurer or the self-insured employer shall cause to be provided only those medical services directed to medical conditions caused in major part by the injury.

"* * * * *

"(c) Notwithstanding any other provision of this chapter, medical services after the worker's condition is medically stationary are not compensable except for the following:

656.704, in light of the Supreme Court's decision in *Shipley*. We begin with the text of the statutes. ORS 656.704(3) is a jurisdictional statute, establishing the respective authority of the Director and the Board to hear certain claims. Under the terms of the statute, the Board has jurisdiction over "matters concerning a claim," which are defined as "those matters in which a worker's right to receive compensation, or the amount thereof, *are directly in issue*." (Emphasis added.) The statute further provides that the Board does not have jurisdiction over medical services disputes arising under ORS 656.245, except as otherwise provided by that statute. Under ORS 656.245(6), the Board has jurisdiction only over those medical services disputes in which the denial of medical services is based on a denial of the compensability of the underlying claim. Otherwise, all claims for medical services under ORS 656.245 come within the exclusive jurisdiction of the Director. ORS 656.704(3).

In *Shipley*, the Supreme Court reviewed the texts of the statutes and concluded that, in a case where the compensability of an underlying claim was no longer at issue before the Board, the Board was stripped of any jurisdiction it may have had to address the claim for medical services. 326 Or at 564-65. In that case, the compensability of the underlying claim was no longer at issue because the claimant chose at the hearing to argue only that the medical services for which coverage was sought were directly and materially related to his original compensable injury. The court reasoned that

> "[t]he issue that the Hearings Division properly could decide and that the Board properly could review was SAIF's denial of the compensability of claimant's 1994 injury, either as an aggravation of the compensable 1989 injury or

---

"* * * * *

"(H) Services that are necessary to diagnose the worker's condition.

"* * * * *

"(6) If a claim for medical services is disapproved for any reason other than the formal denial of the compensability of the underlying claim and this disapproval is disputed, the injured worker, the insurer or self-insured employer shall request administrative review by the director pursuant to this section, ORS 656.260 or 656.327. The decision of the director is subject to the contested case review provisions of ORS 183.310 to 183.550."

as a new compensable injury. When the hearing began, however, claimant chose not to challenge the denial of compensability. Instead he chose to pursue a different theory, linking the post-1994 medical services to the underlying, compensable 1989 claim. * * * When the issue was thus reframed, the administrative law judge and the Board had no authority to decide it. The statutes contain no provision for transferring a case from the Board to the Director. That being so, dismissal was required."

*Id.* at 565.

■■ Although, at first glance, it would appear that the outcome in this case is controlled by *Shipley*, the issue is made more complex by the manner in which claimant's claims were presented to the Board. Claimant appears to have made two separate arguments: (1) that her degenerative disk condition is attributable to her original compensable injury and, therefore, that any diagnostic, palliative or curative treatments for that condition are compensable; and (2) that the diagnostic procedures (the CT scan and the myelogram) were directly and materially related to her original compensable injury. The first issue was clearly within the jurisdiction of the Board as a matter concerning a claim under ORS 656.704(3). The second issue, had it been presented alone, equally as clearly would have been outside the jurisdiction of the Board. *Shipley*, 326 Or at 564. The analytical difficulty springs from the fact that, if the ALJ and the Board had concluded that the degenerative disc condition was compensable, then all the treatments, including the diagnostic procedures, would have been covered and there would have been no question that the Board and not the Director had the authority to address that issue. However, once the ALJ and the Board concluded that the degenerative disc condition was *not* compensable, the issue remained as to whether the diagnostic procedures were related to the earlier compensable injury. Again, had that issue been the *only* issue presented, it would have been within the exclusive jurisdiction of the Director. *Id.*

Neither the text of the applicable statutes nor the Supreme Court's interpretation of those statutes in *Shipley* offers a clear solution. Accordingly, we turn to the legislative history in an effort to discern the legislature's intent.

ORS 656.704(3) was revised in 1995 as part of an overall revision of the Workers' Compensation Law. *See* Or Laws 1995, ch 332, § 50 (SB 369). At that time, there had been a number of court cases addressing the respective authority of the Board and the Director to decide claims, and the drafters of the new legislation sought to correct what they considered to be an erroneous grant of jurisdiction over certain medical services claims to the Board rather than to the Director. Tape recording, Senate Committee on Labor and Government Operations, SB 369, Feb 1, 1995, Tape 19, Side A (statement of Jerry Keene). Mari Miller, then the manager of the Dispute Resolution Section of the Workers' Compensation Division, testified that the purpose of placing claims for medical services within the exclusive jurisdiction of the Director was to ensure that claims for treatment were processed as quickly as possible. Tape Recording, House Committee on Labor, SB 369, March 8, 1995, Tape 48, Side A. She further testified that the Director was the appropriate arbiter of such claims because the claims involve purely medical decisions and not the evaluation of evidence and legal arguments, such as those presented to the Board. *Id.*

Although the testimony of interested parties may not be the best evidence of legislative intent, it still offers us some insight into the practicalities of the claims process. *See Mallon v. Employment Division*, 41 Or App 479, 483, 599 P2d 1164 (1979) ("Although the testimony of a witness before a legislative committee should be cautiously used in determining legislative intent, it is some indication of the legislation's purpose."). It further allows us better to understand why, once the issue of compensability has been dispensed with, either because the claimant has chosen not to contest it, as in *Shipley*, or because the issue has been decided against the claimant, as in this case, any remaining medical services claims are to be decided by the Director.

Claims before the Board and before the Director are treated very differently. The Director has the resources to review a claim for medical services in order to ensure that appropriate treatment is delivered to the claimant in a timely manner, whereas a claim submitted to the Board may result in a lengthy delay in the delivery of or payment for needed services. Tape Recording, House Committee on Labor, SB

369, March 8, 1995, Tape 48, Side A (statement of Mari Miller). With that in mind, we conclude that it was the legislature's intent that disputes over medical services related to compensable claims be decided by the Director, no matter when or how those disputes first arose. Accordingly, the Director had the authority to review this claim even though it originally had been raised in conjunction with a claim that came within the Board's jurisdiction. That is not to say that, had the Board concluded that claimant's degenerative disc condition *was* compensable, it could not have ordered employer to pay for the diagnostic services; rather, we hold only that, once the Board concluded that the new condition was *not* compensable, it could not address the issue whether the diagnostic tests were materially related to the original compensable injury. *That* determination was within the exclusive jurisdiction of the Director.

■ Employer next argues that the Director applied the wrong standard to determine whether the diagnostic tests were sufficiently related to claimant's compensable injury to warrant coverage. The Director affirmed and adopted the ALJ's findings and conclusions as to the medical services issue. The ALJ had concluded that

> "[m]edical services necessary to diagnose a worker's condition are compensable. ORS 656.245(1)(c)(H). '[I]f diagnostic services are necessary to determine the cause or extent of a compensable injury, the tests are compensable whether or not the condition that is discovered as a result of them is compensable.' *Counts v. International Paper Co.*, 146 Or App 768, 771[, 934 P2d 526] (1997), *Brooks v. D & R Timber*, 55 Or App 688, 692[, 639 P2d 700] (1982). Diagnostic services for the purpose of determining a causal relationship, if any, between an accepted condition and the worker's condition are therefore compensable.
>
> "Dr. Kitchel's impression on June 28, 1996, was that claimant's low back and leg complaints were related to her industrial injury. He ordered diagnostic testing to obtain more information as to what was affecting claimant. Claimant's visit to Dr. Kitchel, the myelogram, and the CT scan, were appropriate for the purpose of determining whether claimant's accepted low back strain and leg condition were causing her complaints. Therefore, the services are compensable as necessary diagnostic services."

We conclude that there is substantial evidence in the record to support the ALJ's finding that the tests were for the purpose of determining the extent of the original compensable injury and not, as employer contends, for the purpose of establishing the existence of a new or consequential condition. Accordingly, employer is obligated to pay for those tests under ORS 656.245(1)(a) and ORS 656.245(1)(c)(H). *Counts*, 146 Or App at 771; *Brooks*, 55 Or App at 692.

Affirmed.