Argued and submitted September 5, reversed and remanded October 31, 2001,
petition for review denied February 5, 2002 (333 Or _____ )

ARLINGTON EDUCATION ASSOCIATION,
*Respondent,*

*v.*

ARLINGTON SCHOOL DISTRICT NO. 3,
*Petitioner.*

UP-65-99; A112641

34 P3d 1197

Bruce Zagar argued the cause for petitioner. With him on
the opening brief was Paul A. Goodwin; with him on the

reply brief were Paul A. Goodwin and Garrett, Hemann, Robertson, Jennings, Comstock & Trethewy, PC.

Ralph E. Wiser, III, argued the cause for respondent. With him on the brief were Aruna A. Masih and McKanna Bishop Joffe.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

BREWER, J.

## BREWER, J.

Arlington School District (district) seeks review of an order of the Employment Relations Board (ERB) compelling it to arbitrate a grievance filed by the Arlington Education Association (union) arising from the dismissal of a union member. The district contends that ERB erred in taking official notice of a document that was not submitted in evidence at the hearing on the grievance but that appeared elsewhere in the ERB contested case record. We review for abuse of discretion, ORS 183.450(4), and reverse and remand. ORS 183.482(8)(b)(A).

In September 1999, the union filed an unfair labor practice complaint on behalf of a dismissed district employee, alleging that the district had refused to arbitrate a grievance under the parties' collective bargaining agreement (CBA). During discovery, the union subpoenaed the unredacted minutes of an executive session of the district's Board of Education. On November 15, the district moved to quash the subpoena. The district attached to the motion, as an exhibit, a letter dated September 8, 1999, from the district's attorney to the union. In the letter, the attorney asserted that the redacted portion of the minutes "had nothing to do with" the grievance. The letter also stated that the district was "refusing to process [the employee's grievance,] and that includes refusing to proceed to arbitration." The administrative law judge (ALJ) reviewed the unredacted minutes, determined that they were not relevant, and granted the motion to quash. A different ALJ conducted a contested case hearing on the complaint, and the parties supplemented the hearing with written briefs. At the hearing, the parties' arguments concentrated on the district's *obligation* to arbitrate under the CBA, and the union did not submit the district's letter into the evidentiary record. The ALJ recommended dismissal of the complaint on the ground that the union had failed to establish that the district had *refused* to arbitrate.

The union objected to the ALJ's recommended order, arguing that it was undisputed that the district had refused to arbitrate the grievance. The union moved to reopen the evidentiary record to include the letter from the district's

attorney. On review, ERB declined to reopen the record but decided, instead, to take official notice of the letter. ERB explained its reasoning in a footnote to its decision:

"[O]ur official case file contains a letter dated September 8, 1999, from the District's counsel to the [union]. This letter was submitted by the District as an exhibit to its motion to quash in this case. In the letter, the District states clearly that it was refusing to arbitrate the * * * grievance.

"The [union] attached this same letter as an appendix to its objections to the ALJ's recommended order and requested us to reopen the record and admit the letter as an exhibit. The District objects to our consideration of the September 8 letter, arguing that it was not introduced as an exhibit at hearing and is not a part of the 'record' in this case.

"We disagree that we may not rely on the contents of this letter. We do not condone the [union's] attaching of the letter to its objections. That is not an acceptable method for introducing evidence. This same letter, however, is a part of our official case file and was earlier submitted to this Board by the District as an exhibit. We often have taken notice of the contents of documents in our official files. When we discovered the letter in the file, we informed the parties that we intended to take notice of it and gave them the opportunity to respond. We considered the District's response and were not persuaded that it would be inappropriate to take notice of the letter." 18 PECBR 901, 910-11 n 6 (2000) (citations omitted).

Relying on the letter, ERB concluded that the district had refused to arbitrate the grievance. ERB further determined that the CBA was susceptible to an interpretation obliging the district to arbitrate, and it ordered the district to arbitrate the grievance.

In a concurring opinion, another ERB member also addressed the letter:

"Contrary to our practice, the [union] offered no good cause for its failure to introduce the document at hearing. The District argues, with some justification, that we would be giving the [union] a windfall if we deny the [union's] request to reopen, yet nonetheless take notice of the same letter from our files.

"On the other hand, if we ignore the document, the District receives a windfall because the complaint would be dismissed on a technical ground that neither party contemplated. The District did not seriously dispute its refusal to arbitrate the grievance at issue here, as can be seen by reviewing the way it litigated this case. * * *

"* * * * *

"* * * [T]he parties approached the issue as whether the District had an *obligation* to arbitrate, not whether it *refused* to arbitrate. The letter is material to the issue of refusal. It was submitted to us by counsel for the District, albeit for a different purpose. There is no reason to believe that it is not credible or misstates the District's position. We told the parties we intended to take notice of the letter and gave them an opportunity to respond. The District offered argument about why we should not take notice of the letter but did not rebut the information it contained or challenge its authenticity.

"As to the possibility that our ruling will encourage sloppy litigation habits in the future, I believe our rules and practices are sufficient to address those concerns. * * * Our decision to take notice is always discretionary. The circumstances here were somewhat unusual, and complicated what would otherwise have been a relatively straightforward exercise of discretion. In the interests of resolving the labor relations dispute presented, taking notice of the letter is appropriate." *Id*. at 919-20 (Stiteler, Chair, concurring) (footnotes omitted; emphasis in original).

One ERB member dissented, asserting that the letter was not subject to official notice. However, the dissent agreed with the majority that the union should not be allowed to reopen the evidentiary record, stating that "[i]t is well-established that we do not accept evidence introduced after the close of the hearing, absent a showing of good cause." *Id*. at 920 (Thomas, dissenting).

On review, the district makes two assignments of error. First, it asserts that ERB erred in taking official notice of the September 8, 1999, letter to establish that the district had refused to arbitrate the grievance. Because there was no other evidence that it had refused to arbitrate, the district contends that ERB was required to dismiss the complaint. In

its second assignment, the district asserts that the grievance was not arbitrable under the CBA. Because, as explained below, the first assignment of error is dispositive, we do not address the second.[1]

We review ERB's decision to take official notice for abuse of discretion. *See* ORS 183.450(4) (providing for agency discretion in taking official notice). An agency abuses its discretion when its action is (1) outside the range of discretion delegated to the agency by law; (2) inconsistent with an agency rule or an officially stated agency position; or (3) otherwise in violation of a constitutional or statutory provision. ORS 183.482(8)(b). Here, the district contends that taking official notice of the letter falls outside the range of discretion delegated to ERB under ORS 183.450(4), which provides that "[t]he hearing officer and agency may take notice of judicially cognizable facts, and may take official notice of general, technical or scientific facts within the specialized knowledge of the hearing officer or agency." The term "judicially cognizable facts" is not defined by statute. However, OEC 201(b) defines the similar term "judicially noticed fact":

"A judicially noticed fact must be one not subject to reasonable dispute in that it is either:

"(1) Generally known within the territorial jurisdiction of the trial court; or

"(2) Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

Because a judicially *noticed* fact must, of necessity, be judicially *cognizable*, we conclude that ORS 183.450(4) corresponds to OEC 201(b). *See SAIF v. Calder*, 157 Or App 224, 227, 969 P2d 1050 (1998) (holding that a court or administrative agency may take judicial notice of facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned).

---

[1] The union does not cross-assign error to ERB's refusal to reopen the hearing for the purpose of receiving the letter in evidence.

The union does not contend that ERB was authorized to take official notice of the letter under OEC 201(b)(1). Instead, it asserts that ERB was entitled to take notice under subsection (b)(2). The union reasons that the district's refusal to arbitrate is capable of accurate and ready determination by resort to a source—the letter the district submitted to ERB as part of the official record in the administrative proceeding—whose accuracy at least the *district* cannot challenge.

Whether a private document submitted by a party into an agency record can constitute a source "whose accuracy cannot reasonably be questioned" presents a question of statutory construction. In interpreting a statute, the court's task is to discern the intent of the legislature. ORS 174.020; *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). The best evidence of legislative intent is the text and context of the statute. *Id.* at 610-11. The context of a statute includes other provisions of the statute and related statutes, in addition to case law interpreting the statute at issue. *State v. Toevs*, 327 Or 525, 532, 964 P2d 1007 (1998).

The Oregon Evidence Code does not define the questioned phrase. Nor is the text of the statute especially helpful in determining its meaning. The text suggests that *someone* must be unable to reasonably question the accuracy of the sources. However, because the statute is written in the passive voice, it does not specify who that someone is. Based solely on the text, it could be the party adversely affected by the court's taking of notice. That construction would favor the union's position that the letter is an appropriate source for judicial notice. It is consistent with ERB's reasoning that the district may not question the letter's accuracy, because it submitted the letter into the prehearing administrative record. On the other hand, the phrase could refer to a broader community such as the public at large. That interpretation would favor the district's position that the letter is not a proper subject of official notice, because it is not an indisputably accurate source as far as the broader public is concerned. Although the statutory text alone does not resolve the parties' dispute, decisions of this court clarify that the phrase excludes *private* documents that have been submitted into a

prehearing court or administrative record by a party to the proceeding.

The most instructive case examining OEC 201(b) is *Thompson v. Telephone & Data Systems, Inc.*, 130 Or App 302, 881 P2d 819, *adhered to as mod on recons* 132 Or App 103, 888 P2d 16 (1994).[2] In *Thompson*, the plaintiffs brought an action seeking a declaration that their agreements with one defendant, TDS, were unenforceable. *Id.* at 105. TDS filed counterclaims seeking, among other things, a declaration that the agreements were fully enforceable. *Id.* Neither party incorporated or attached the agreement to the pleadings; instead, the plaintiffs appended copies of the agreements to their brief. *Id.* The trial court took judicial notice of the contents of the appended copies and granted judgment on the pleadings. *Id.* On appeal, TDS argued that judicial notice was inappropriate, and we agreed:

> "[T]here is a distinction between judicially noticing the existence of a court record and noticing the truth of the contents of that record, much less the truth of a document that happens to be appended to the court record. *See* Kirkpatrick, *Oregon Evidence* 51 (2d ed 1989). Even under the federal rules, *although it may be appropriate to judicially notice the former, it is inappropriate to notice the latter. See* [21] Wright and Graham, *Federal Practice and Procedure* § 5104 (1977). Yet, in this case, that is precisely what [the plaintiffs] assert the trial court properly did: notice the fact that the agreements that are not in the pleadings say what [the plaintiffs] say that the agreements say." *Id.* at 107 (emphasis added).

We held that the trial court could not interpret the provisions of contracts that neither were properly before the court nor subject to judicial notice. *Id.*

---

[2] The union cites *Oden v. Oden*, 157 Or 73, 69 P2d 967 (1937), and *State ex rel v. Richardson*, 48 Or 309, 85 P 225 (1906), for the proposition that "sources whose accuracy cannot reasonably be questioned include information or knowledge of facts acquired at previous hearings of the same cause contained in court records or files." Both cases predate by a lengthy margin Oregon's adoption of the Evidence Code in 1981. Moreover, despite the use of the term "judicial notice," *Oden* addressed the doctrine of issue preclusion, and *Richardson* addressed the doctrine of "the law of the case." Accordingly, neither is instructive in construing OEC 201(b).

■ This case bears striking parallels to *Thompson.* Here, as in *Thompson,* the document at issue was contained in the official record of the proceedings but did not constitute evidence subject to consideration in ERB's determination of the case.[3] In *Thompson,* under different circumstances, it may well be that the defendant could not deny what the agreement provided. Nonetheless, because judicial notice does not extend to discerning the accuracy of the contents of a private document merely because it happens to be found among court records, the court could not take notice that the plaintiff's interpretation of the agreement was correct. Likewise, here, it is immaterial whether the district may have had a well-taken objection to a timely offer of the letter in the contested case hearing as evidence of its refusal to arbitrate. ERB could not take official notice of the contents of the letter as a surrogate for its receipt in evidence merely because it was appended to a motion somewhere in the administrative record. Accordingly, here, as in *Thompson,* official notice of the accuracy of assertions in the letter is inappropriate. As this court explained in *Petersen v. Crook County,* 172 Or App 44, 51, 17 P3d 563 (2001):

> "A distinction must be drawn between noticing the existence of court records or information in court records and noticing the truth of that information. *The fact that* certain records or entries exist or *certain statements were made may be indisputable. However, the truth of those statements may be disputable, and hence will not be subject to judicial notice.*" (Emphasis added; internal quotation marks omitted; citing Laird C. Kirkpatrick, *Oregon Evidence,* 47 (3rd ed 1996).)

In fact, ERB's view reflects a substantial departure from the two types of judicially noticeable sources under OEC

---

[3] ORS 183.415(11)(a) provides that the record in a contested case shall include "[a]ll pleadings, *motions* and intermediate rulings." (Emphasis added.) Because the letter was attached to the district's prehearing motion, it was included in the contested case record. However, the union does not assert, nor did ERB presume, that its mere presence in the agency record qualified the letter as evidence subject to consideration in ERB's determination of the case. That possibility is refuted by ORS 183.450(2), which provides, in part:

"All evidence shall be offered and made a part of the record in the case, and except for matters stipulated to and except as provided in subsection (4) of this section no other factual information or evidence shall be considered in the determination of the case."

201(b)(2) that historically have been approved by Oregon courts. Since the legislature adopted the Oregon Evidence Code in 1981, courts have approved only of reference works and public records as "sources whose accuracy cannot reasonably be questioned." In each case, the source was widely available to the public.[4] The district's letter cannot be characterized as a reference work, and, though its existence may be a *matter* of public record by virtue of its appearance in ERB's case file, it is not a public record *itself*. *See* OEC 1005 (describing a public record as an official record or a document authorized to be recorded or filed and actually recorded or filed).

Our conclusion is bolstered by the views of commentators on the identical federal rule. *See State v. Wright*, 315 Or 124, 129-30 n 5, 843 P2d 436 (1992) (considering federal decisions construing the identical federal rule in determining the meaning of OEC 104); *see also State v. Ordonez-Villanueva*, 138 Or App 236, 244 n 9, 908 P2d 333 (1995), *rev den* 322 Or 644 (1996) (considering the views of commentators on identical federal rule in construing OEC 104). In addressing the meaning of FRE 201(b)(2), Professors Wright and Graham explain that "[t]he limits of judicial notice under Rule 201(b)(2) focus on the *source that the judge uses to verify the fact* to be noticed." *Federal Practice and Procedure* § 5106, 499 (emphasis added).

"The present [question is] * * * what materials can qualify as a 'source' of judicial notice under Rule 201(b)(2). The New Jersey draftsmen thought sources 'meant treatises, encyclopedias, almanacs, and the like.' The California codifiers took a broader view: 'Sources of "reasonably indisputable accuracy" include not only treatises, encyclopedias,

---

[4] For examples of reference works approved as sources, see *Forelaws on Board v. Energy Fac. Siting Council*, 306 Or 205, 230, 760 P2d 212 (1988) (scientific article on the relationship of radon-222 concentration to height); *Barrett v. Coast Range Plywood*, 294 Or 641, 643, 661 P2d 926 (1983) (medical dictionary); *Bend Millwork v. Dept. of Revenue*, 285 Or 577, 583, 592 P2d 986 (1979) (dictionary); *State v. Wagner*, 63 Or App 204, 207, 662 P2d 799 (1983) (Physician's Desk Reference).

For examples of public records approved as sources, see *Tiner v. Clements*, 173 Or App 168, 169, 20 P3d 262 (2001) (prior court judgment of conviction); *Confederated Tribes (Siletz) v. Employment Dept.*, 165 Or App 65, 70, 995 P2d 580 (2000) (election results); *U.S. National Bank v. Heggemeier*, 106 Or App 693, 695 n 2, 810 P2d 396 (1991) (date of the entry of judgment); *Nasef v. U & I Investments*, 91 Or App 344, 347, 755 P2d 136 (1988) (existence of a proceeding in another state).

almanacs, and the like, but also persons learned in the subject matter.' In the face of this conflict over the possibility of human 'sources' for judicial notice, the Advisory Committee did nothing. Thus it will be up to the courts to determine whether to take the California or New Jersey interpretation of the word; clearly in common parlance the word can be given either meaning.

"It is believed that the New Jersey interpretation, which limits 'sources' to published works, is more consonant with the policy of Rule 201 than the view taken in California. A book has permanent and finite limits so that over a period of time it can be checked and gradually acquire a reputation as a source of reasonably indisputable accuracy. But few people, whatever they thought of a man's talents, would be prepared to vouch for everything he might choose to say." *Id.* at 502-03 (footnote omitted).

Thus Wright and Graham suggest that the meaning of "source" under the federal rule should be limited to published works and should not include the opinions of learned experts. Whether that limitation is appropriate under OEC 201(b)(2) we need not decide here, because ERB's view is more extreme than either choice posed by Wright and Graham. ERB did not decide that the district's attorney was a learned expert whose assertions were indisputably accurate. Instead, it ruled that the mere presence of the letter in the agency record made its contents a proper subject of official notice. Our review discloses no judicial decision under OEC 201(b)(2) or its federal counterpart holding that a private document may be a source of judicial notice merely because a party tendered the document into the record of the judicial or administrative proceeding. As noted, *Thompson* and *Peterson* are to the contrary.

We are mindful of the quandary articulated by the ERB concurrence: The district appears to gain a windfall from an evidentiary issue that it did not seriously contest. We recognize that the district's letter lies at ERB's fingertips, begging for consideration, and that a variety of judicial doctrines have evolved to address analogous anomalies.[5] However, an administrative agency may consider only factual evidence in a contested case that is offered at a hearing,

---

[5] *See Paulson v. Western Life Insurance Co.*, 292 Or 38, 52-53, 636 P2d 935 (1981) ("equitable estoppel" is employed to prevent one from proving an important

stipulated to, or is subject to official notice. ORS 183.450(2). Here, ERB invoked official notice, the requirements of which have not been met. The letter from the district's attorney is not a source whose accuracy cannot reasonably be questioned under OEC 201(b)(2). Although ERB has discretion under ORS 183.450(4) to take official notice, ERB acted outside the range of discretion delegated. In doing so, it erred.

Reversed and remanded.

---

fact to be something other than what by act or omission he has led another party justifiably to believe); *Hampton Tree Farms, Inc. v. Jewett*, 320 Or 599, 609, 892 P2d 683 (1995) ("judicial estoppel" bars a party "from assuming a position in a judicial proceeding that is inconsistent with the position that the same party has successfully asserted in a different judicial proceeding"); *Kalgaard v. Lindo Mar Adventure Club, Ltd.*, 147 Or App 61, 67-68, 934 P2d 637 (1997) (a "judicial admission" is a party's admission of fact in a pleading, which normally is conclusive on the party making such an admission). The union has not made an argument based on any of those doctrines, so we do not consider them further.