Argued and submitted February 26, 2001; resubmitted en banc January 16, reversed and remanded for reconsideration March 20, 2002

In the Matter of the Compensation of
Lushona K. Icenhower, Claimant.

Lushona K. ICENHOWER,
*Petitioner,*

*v.*

SAIF CORPORATION
and S & S Sheetmetal, Inc.,
*Respondents.*

98-10087; A110770

43 P3d 431

Robert F. Webber argued the cause for petitioner. With him on the brief was Black, Chapman, Webber & Stevens.

Jerome P. Larkin argued the cause and filed the brief for respondents.

Before Deits, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Linder, Wollheim, Kistler, Brewer and Schuman, Judges.

HASELTON, J.

Wollheim, J., concurring.

**HASELTON, J.**

In this workers' compensation case, claimant seeks judicial review of an order of the Workers' Compensation Board dismissing her request for a hearing for lack of jurisdiction. We review for errors of law, ORS 183.482(8)(a), and reverse and remand for reconsideration.

The material facts are largely undisputed. Claimant injured her shoulder in November 1998 and filed a workers' compensation claim in early December 1998. SAIF denied the claim, and claimant requested a hearing on the compensability of her shoulder condition. A hearing was initially scheduled for March 1999, but was postponed until June 24, 1999, so that SAIF could depose claimant's attending physician. At the beginning of the June 24 hearing, claimant raised the issue of penalties for the first time. At SAIF's request, the administrative law judge (ALJ) continued the hearing until October 28, 1999, to allow SAIF to respond to the new issue.[1]

One week before the hearing reconvened on October 28, SAIF orally agreed to rescind its denial and to pay claimant's attorney fees. When the hearing reconvened, SAIF informed the ALJ that the parties would prepare a stipulation reflecting their agreement. SAIF then argued that Hearings Division lacked jurisdiction, citing ORS 656.262(11)(a) (discussed below), because the only remaining issue was the penalty, which SAIF argued was within the exclusive jurisdiction of the director of the Department of Consumer and Business Services (DCBS). The ALJ took the issue under advisement. In mid-November, the parties submitted a proposed stipulation and order, which the ALJ signed on November 18, 1999. On November 29, 1999, the ALJ issued his opinion and order, concluding that the Hearings Division

---

[1] The parties disagree over whether the June hearing was continued or postponed. Both the ALJ and the Board referred to the October hearing as being continued from the June hearing. After a review of the record, we conclude that the June hearing was continued rather than postponed. That conclusion is supported by OAR 438-006-0091(3), which states that an ALJ may grant a continuance for further proceedings "for any party to respond to an *issue raised for the first time at a hearing*." (Emphasis added.)

lacked jurisdiction to decide the penalty issue. The Board affirmed.

On judicial review, claimant argues that the Hearings Division acquired jurisdiction when she requested a hearing on SAIF's denial, and that, because SAIF still contested compensability when claimant raised the penalty issue at the June 1999 hearing, the matters at issue were penalties and compensability. Claimant further argues that the Hearings Division did not lose jurisdiction over the proceeding when, immediately before the hearing reconvened October 28, SAIF agreed to withdraw its compensability denial and pay claimant's attorney fees. In claimant's view, the Hearings Division had jurisdiction and could not lose it in the midst of a proceeding.

In response, SAIF acknowledges that, at least initially, the Hearings Division had jurisdiction over the entire proceeding, but argues that after SAIF agreed to rescind its denial and pay claimant's attorney fees only the penalty issue remained. At that point, SAIF argues, the Hearings Division was divested of jurisdiction.

■ The issue is one of statutory construction: Did the legislature, in adopting ORS 656.262(11)(a), intend that proceedings that were *initially* properly before the Hearings Division must be dismissed if, at some point thereafter, the imposition of penalties under ORS 656.262(11)(a) becomes the only remaining issue? In a related sense, even if the Hearings Division erred in dismissing claimant's action, was the action properly dismissed by the Board because, by the time the Board considered claimant's request for review, the only remaining issue was penalties? We begin by examining the statutory text in context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993).

ORS 656.262(11)(a) provides, in part:

"If the insurer or self-insured employer unreasonably delays or unreasonably refuses to pay compensation, or unreasonably delays acceptance or denial of a claim, the insurer or self-insured employer shall be liable for an additional amount up to 25 percent of the amounts then due. *Notwithstanding any other provision of this chapter, the director shall have exclusive jurisdiction over proceedings*

*regarding solely the assessment and payment of the additional amount described in this subsection.*" (Emphasis added.)

The critical statutory language is "proceedings regarding solely the assessment and payment of [penalties]"—and, even more precisely, "proceedings." There is no dispute that the only issue remaining by the time this action reached the *Board* related solely to penalties. Thus, if "proceedings" were construed narrowly as meaning each discrete *stage* of the litigation process, the "proceedings" before the Board related solely to entitlement to penalties—and the Board lacked jurisdiction to determine that matter. In a related sense, if "proceedings" were so (narrowly) construed, the Board could not remand to the ALJ to rectify his original error because the ALJ would no longer have jurisdiction to consider the penalty issue. In sum, under a segmented construction of "proceedings," the parties' stipulation as to compensability would obviate subject matter jurisdiction with respect to penalties.

Conversely, if "proceedings" were construed broadly, to encompass the litigation and review process as a whole, then the intervening execution and filing of the stipulation would not have such jurisdictional implications. Under such a holistic construction, the "proceedings" did not relate solely to penalties because, at least originally, compensability was also at issue. The fact that compensability was later conceded would not alter the reality that it was originally in dispute—and, thus, that the "proceedings" viewed as a whole did not pertain solely to penalties. Under such a construction, the Board would have jurisdiction to remand to the ALJ to determine claimant's alleged entitlement to penalties, and the ALJ would have jurisdiction to do so.[2]

We return, thus, to the meaning of "proceedings." In common usage when referring to legal matters, "proceedings" means "the course of procedure in a judicial action or in a suit

---

[2] The same analysis, by extension, applies to our review: If "proceedings" should be construed narrowly, a remand is erroneous because the Hearings Division lacks jurisdiction to determine the merits of claimant's alleged entitlement to penalties. Conversely, if the broader, holistic construction is correct, a remand is appropriate.

in litigation: legal action" or "a particular action at law or case in litigation." *Webster's Third New Int'l Dictionary*, 1807 (unabridged ed 1993). The term can be properly understood not just as a matter of common usage but also as a term of art. In that sense, *Black's Law Dictionary*, 1221 (7th ed 1999) offers two pertinent definitions of "proceeding":

> "**1.** The regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment.
>
> "* * * * *
>
> "**3.** An action or step that is part of a larger action."[3]

Thus, "proceedings" can be plausibly understood to refer to the entire course of litigation or to individual steps within that process.

Contextual review of the workers' compensation statutes is not especially enlightening. There are no contextual clues as to the scope of the jurisdictional limits in ORS 656.262(11)(a), and, while contextual references to "proceeding" or "proceedings" generally appear to be used in the more limited "step-by-step" sense, those references are insufficient to clarify the legislative intent. *See, e.g.,* ORS 656.268(6)(a) (referring to "reconsideration proceeding"); ORS 656.726(4)(g) (Director of Department of Consumer and Business Services may conduct hearings, investigations and "other proceedings" regarding matters not specifically allocated to the Board or Hearings Division); ORS 656.283(6) (requiring record of "all proceedings at the hearing" before the ALJ); ORS 656.704 (application of Oregon Administrative Procedures Act in contested case "proceedings"); ORS 656.298(2), (3) (describing "review proceedings" before Court of Appeals); ORS 656.298(6)(c) (requiring Board to forward to Court of Appeals all decisions and orders entered during "the hearing and review proceedings").

---

[3] The definitional inquiry is further complicated because it is unclear whether ORS 656.262(11)(a) employs "proceedings" as the plural of "proceeding" or as a discrete noun. Either treatment would be consistent with the dictionary definitions quoted above.

Thus, the "text in context" inquiry does not resolve the ambiguity. However, resort to legislative history is decisive.

The critical language of ORS 656.262(11)(a)—providing that the director has "exclusive jurisdiction over proceedings regarding solely the assessment and payment" of penalties—was added to the statute as part of the omnibus 1990 amendments to the workers' compensation laws. SB 1197 (1990).[4]

The exclusive jurisdiction language now codified at ORS 656.262(11)(a) was included in section 15 of Senate Bill 1197. As described in an executive summary of the amendments prepared by the Governor's Workers' Compensation Labor Management Advisory Committee, section 15 accorded the director "exclusive jurisdiction over proceedings regarding a payment of penalties as a result of an insured or self-insured employer's unreasonable delay or refusal to pay compensation or to accept or deny claims."

At the hearings on the bill before the Interim Special Committee on Workers' Compensation, Ross Dwinell, co-chair of the Advisory Committee, and Cecil Tibbitts, member of the Advisory Committee, engaged in an exchange with Representative Kevin Mannix that clarified the objectives of the "exclusive jurisdiction" language in section 15:

> Tibbitts:   "[Section 15] made a change dealing with 'penalty only' issues. When a worker has an issue, they are happy with their award, or maybe they don't have a disability award, all they have is time loss, and they have all the time loss due to them, but let's say one of those payments is late. If that's the only issue the worker has, we wanted to provide an administrative remedy. We don't want the hearings process clogged up with 'penalty only' issues. So what we provided is a system whereby the Director has exclusive authority over those issues that are only regarding a penalty.
>
> "Now, to clarify our intent, *if you have another issue that you need to take to hearing and you also have a penalty*

---

[4] The language was originally codified at ORS 656.262(10)(a), but was renumbered during the 1995 legislative session. Or Laws 1995, ch 332, § 28.

*issue, that would go through the regular process as always.* When we have the only issue being the penalty, then we have this administrative remedy. And we provided that the penalty does come to the worker, if the worker does choose to be represented, the attorney will receive half of that penalty as their attorney fee."

Mannix: "What you just said disturbs me greatly, because I cannot perceive of a single claim where a claimant's attorney could not think of some other issue to stick in a request for hearing just to get to the referee on the penalty and fee issue.

"Last time, when responsibility cases were supposed to go to arbitration, that kind of language was used. * * * I have had one arbitration for responsibility for about 50 hearings on the issue. Why? Because the lawyers always come up with another issue to stick on the claim. So this provision has no use to it, because there will always be some other issue. The referee might rule against them on the issue, but they are then before the referee and, based on what you have just said, there'll be the attorney fee award, and a separate penalty. * * *

"I thought what you were saying is that all penalty and fee issues go to the Director, and you could have a bifurcated proceedings. You have a compensability issue, go for hearing, but as to your penalty issue, you write a letter to the Director, and if there is a penalty, let the worker get it."

Dwinell: "We originally talked about doing just that. This represents a compromise. And our understanding is that, on penalty issues only, whether the referee decides the penalty issue, or the Director decides the penalty issue, the fee will be 100% of the penalty awarded. * * * This represents a compromise."

Mannix: "But you are aware that what you are walking into here is, as far as anyone else getting into the Hearings Division, the other law will apply, and we will see penalties and fees awarded by the Hearings Division. You are aware of that?"

Dwinell: "Yes."

Mannix: "Okay." Tape recording, Interim Special Committee on Workers' Compensation, SB 1197, May 3, 1990, Tape 1, Side B (emphasis added).

That history demonstrates that the 1990 amendments were intended to streamline the process when "the only issue" was entitlement to penalties but that, "if you have another issue that you have to take to hearing and you also have a penalty issue, that would go through the regular process as always." *Id.* (remarks of Cecil Tibbitts). When Representative Mannix pointed out the ease with which a claimant could assert "some other issue to stick in a request for a hearing just to get to the referee on the penalty and fee issue," the drafters acknowledged that they were well aware of that potential under the amendment—which the legislature subsequently enacted as written. The entire focus of the legislative history is on the claims and issues as framed *at the outset of the process.* There is no implication that if, at some later point, penalty issues became the only matter in dispute, the Hearings Division would lose jurisdiction and entitlement to penalties would—somehow—have to be relitigated before the director.[5] Indeed, such a result would flatly contradict and subvert the expressed intent of simplifying and expediting the process.[6]

In sum, the legislative history establishes that, once a dispute is properly before the Hearings Division, any subsequent narrowing of the issues to just the penalty issue does not divest the Hearings Division of jurisdiction over the dispute. In addition, the legislative history corroborates that the term "proceedings" in ORS 656.262(11)(a) connotes the entire course of the workers' compensation litigation and review process beginning with claimant's request for a hearing.[7]

[5] There is no mechanism or procedure in the rules of the Workers' Compensation Division for transferring a claim for penalties from the Hearings Division to the director.

[6] Consider the following scenario: A claimant seeks benefits and penalties before an ALJ and is awarded both. The employer disputes both matters before the Board but, after full briefing and argument, concedes the claimant's entitlement to benefits. Under a narrow reading of "proceedings," the Board could not affirm the award of penalties—but, instead, the claimant would be required to begin anew before the director.

[7] The concurrence takes the view that "proceedings" in ORS 656.262(11)(a) refers neither to each discrete stage of the workers' compensation litigation and review process nor to the entire course of that process. Instead, the concurrence posits that "proceedings" is defined by whether compensability remains at issue at the time the record before the ALJ closes. 180 Or App at 308-09 (Wollheim, J., concurring). Thus, under the concurrence, the submission of pleadings, argument, and

Given that construction, not only did the ALJ have jurisdiction to determine claimant's entitlement to penalties—and erred in failing to do so—but the Hearings Division *continues* to have jurisdiction over that matter.

Our conclusion, which comports with, and is dictated by, the *PGE* analysis, contradicts our disposition in *Corona v. Pacific Resource Recycling*, 125 Or App 47, 49, 865 P2d 407 (1993). In *Corona*, the claimant initially sought a hearing on the issues of temporary partial and temporary total disability, as well as seeking a penalty and an award of attorney fees from the employer. Before hearing, the employer paid the claimant's requested disability benefits. At hearing, the ALJ determined that it lacked jurisdiction under ORS 656.262(11)(a) and dismissed the claimant's hearing request. The Board affirmed and adopted the ALJ's order of dismissal.

We affirmed. In so holding, we held that the issue remaining at hearing, while couched as a request for penalties *and* attorney fees, was solely the claimant's entitlement to penalties. *Corona*, 125 Or App at 50-51. That was so, we reasoned, because "when the only misconduct asserted would, if proved, support a penalty, no fees can be assessed, and the sole issue is entitlement to a penalty." *Id.* at 50 n 1.[8]

Thus, our holding in *Corona* depended, albeit implicitly, on the premise that the Hearings Division can lose jurisdiction over a proceeding if, after the filing of a claimant's request for hearing, penalties become the only issue. We did not, however, examine the correctness of that premise,

---

evidence at hearing is not part of the "proceedings"—but everything that follows the closing of the record before the ALJ is. Or, perhaps, under the concurrence, the pleadings, arguments, and evidentiary submissions at hearing are or can be, part of the "proceedings"—but are somehow deemed to be inchoate unless or until the record closes.

That idiosyncratic construction cannot be justified under *PGE*—and the concurrence makes no attempt to do so. Such a "neither fish nor fowl" approach cannot be reconciled with either of the two plausible plain meaning definitions of "proceedings." *See* 180 Or App at 310. Nor—notwithstanding the concurrence's reference to "cherry picking"—does the legislative history suggest any support for the concurrence's customized construction of "proceedings." *See id.* at 311-13. Finally, and parenthetically, the concurrence's suggested approach is contrary to the Board's *own* definition of "proceedings." *See* OAR 438-005-0070 ("Proceedings before the Hearings Division are begun by filing a request for hearing meeting the requirements of ORS 656.283.").

[8] The continued viability of that aspect of *Corona* is not at issue in this case.

much less consider the meaning of "proceedings" in ORS 656.262(11)(a).[9] Even more particularly, in *Corona* we did not consider the text, context, or legislative history of ORS 656.262(11)(a). For that matter, our opinion does not include any citation to *PGE*.[10]

In all events, we are now squarely faced with the question of statutory construction that we did not consider in *Corona*. For the reasons described previously, employing the *PGE* methodology, "proceedings" in ORS 656.262(11)(a) connotes the entire course of the workers' compensation litigation and review process beginning with claimant's request for a hearing. To the extent that *Corona* is to the contrary, we repudiate that aspect of *Corona*.

Here, compensability was at issue at the time the review proceeding began, and the subsequent narrowing of issues did not divest the Hearings Division or the Board of jurisdiction over the matter. Consequently, the Board erred when it dismissed claimant's request for a hearing for lack of jurisdiction.

Reversed and remanded for reconsideration.

**WOLLHEIM, J.,** concurring.

I write separately to concur because the majority unnecessarily reaches an issue of statutory construction that is inconsistent with our holding in *Corona v. Pacific Resource Recycling*, 125 Or App 47, 865 P2d 407 (1993), and OAR 436-060-0155(6). This case should be resolved on narrower grounds that are consistent with *Corona*.

In adopting ORS 656.262(11)(a), did the legislature intend that proceedings that were *initially* properly before

---

[9] That is unsurprising given that the parties' briefs, which were filed before the Supreme Court's decision in *PGE*, did not even mention the issue.

[10] Again, that is unsurprising given the manner in which the parties framed the issues and given that *PGE* was decided after oral argument in *Corona* and less than two months before we decided *Corona*. Bluntly: The parties were unconcerned with statutory construction and, because they were not, neither were we. The concurrence, which relies on *Corona*, does not contend otherwise. *Accord Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) (addressing court's obligation to properly construe statute, regardless of whether "the correct interpretation" is asserted by the parties).

the Hearings Division be dismissed if, at some point thereafter, the imposition of penalties under ORS 656.262(11)(a) becomes the only remaining issue? 180 Or App at 300.

ORS 656.262(11)(a) provides, in part:

"If the insurer or self-insured employer unreasonably delays or unreasonably refuses to pay compensation, or unreasonably delays acceptance or denial of a claim, the insurer or self-insured employer shall be liable for an additional amount up to 25 percent of the amounts then due. *Notwithstanding any other provision of this chapter, the director shall have exclusive jurisdiction over proceedings regarding solely the assessment and payment of the additional amount described in this subsection.*" (Emphasis added.)

This statute refers to "proceedings" in a manner that is inclusive of both the Hearings Division and the director. Hence, the phrase "proceedings regarding solely the assessment and payment of [penalties]," applies to the director as well as the Hearings Division and *any* proceeding regarding only the issue of a penalty. While I agree with the majority's framing of the issue, there is necessarily a flip side: In adopting ORS 656.262(11)(a), did the legislature intend that proceedings that were *initially* properly before the director (*i.e.*, a dispute solely involving issue of penalties) be dismissed if, at some point thereafter, compensation becomes an issue before the Hearings Division?

The majority holds that jurisdiction permanently vests at the time a request for hearing is made, regardless of whether circumstances change prior to the commencement of the hearing or the closing of the record. My position is that, for jurisdiction to become permanent, compensability must be at issue when the hearing commences and when it ends with the close of the record.

Putting aside for a moment the merits of the majority's *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), analysis of the term "proceedings" in ORS 656.262(11)(a), we are not, as the majority claims, "squarely faced" with this question of statutory construction. In *Corona*, the claimant raised issues of compensability, attorney fees, and penalties in his request for hearing. *Before* the

hearing commenced, the employer paid the requested benefits. We affirmed the Board's dismissal of the claimant's request for hearing and held that exclusive jurisdiction was with the director because assessment of penalties was the sole issue.[1] 125 Or App at 50. The majority acknowledges that *Corona* depended on the premise that jurisdiction can be lost after the request for hearing is filed but before the hearing commences. Nonetheless, the majority finds that *Corona* did not examine the correctness of that premise or consider the meaning of "proceedings" under the *PGE* framework, and therefore "we are now squarely faced with the question of statutory construction that we did not consider in *Corona*." 180 Or App at 307.

We do not have to construe ORS 656.262(11)(a) because the same result is obtained under *Corona* as under the majority's interpretation. Compensability was at issue when the hearing convened in June 1999 and was still at issue when the hearing was continued to October 1999. Between June and October, the parties orally agreed to enter into a stipulated settlement. However, the stipulation was not approved by the administrative law judge (ALJ) until after the October hearing had adjourned and the record was closed. A stipulated settlement must be approved in writing by an ALJ before it has any binding effect. *See* OAR 438-009-0001(3).[2] Additionally, the stipulation and order did not become part of the record because it was signed by the ALJ in November after the evidentiary record had closed in October 1999. *See* ORS 656.295(5) ("The review by the board shall be based upon the record * * *."); *Arlington Ed. Assn. v. Arlington Sch. Dist. No. 3*, 177 Or App 658, 34 P3d 1197, *rev*

---

[1] That was because the claimant was asserting that the same conduct justified penalties and attorney fees, and therefore the attorney fees would be part of the penalty. *See Oliver v. Norstar, Inc.*, 116 Or App 333, 336, 840 P2d 1382 (1992) ("when the misconduct is such that a penalty may be assessed under ORS 656.262(10), no fees are available under ORS 656.382(1)").

[2] OAR 438-009-0001(3) provides:

" 'Settlement Stipulation' means a written agreement, or an oral agreement if made on the oral record of a hearing and *approved in writing by a[n ALJ]*, in which any matter contested between the parties, other than matters resolvable in a claim disposition agreement or disputed claim settlement, are resolved by agreement of the parties." (Emphasis added.)

*den* 333 Or 399 (2001) (holding that the Employment Relations Board (ERB) erred in taking official notice of a letter not submitted into evidence at hearing but that appeared elsewhere in ERB's contested case record). Both penalties and, technically, compensability, remained at issue during the continued October 28, 1999, hearing and after the record had closed. Because the ALJ had jurisdiction over the compensability issue and the stipulated settlement, he also had jurisdiction to award penalties.[3]

SAIF incorrectly argues that, when the October hearing commenced, the sole issue was penalties and therefore the ALJ had lost jurisdiction. Claimant, on the other hand, argues that jurisdiction is determined when the request for hearing is made. It does not matter whether we hold that "proceedings" refers to the point at which the request for hearing is made, the proceedings commenced, or the record closed, because compensability was technically still at issue when the record closed after the October 1999 hearing. The facts of this case simply do not present us with a situation where we need to determine the meaning of "proceedings" for purposes of determining jurisdiction under ORS 656.262(11)(a), much less unnecessarily overrule precedent.

That being said, I also take issue with the majority's statutory interpretation that mischaracterizes legislative

---

[3] This case is distinguishable from *SAIF v. Shipley*, 326 Or 557, 955 P2d 244 (1998), and *Roseburg Forest Products v. Langley*, 156 Or App 454, 965 P2d 477 (1998). In *Shipley*, the Supreme Court held that, under ORS 656.704(3) (1997) and ORS 656.245(6) (1997), the Board lost jurisdiction that it may have had to address a claim for medical services in a case where the compensability of an underlying claim was no longer at issue, because at hearing the claimant withdrew it. Because the issue at the time of hearing had been reframed as a claim only for medical services, the ALJ and the Board had no authority to decide the reasonableness of those medical services under ORS 656.245(6) (1997). In *Langley*, we held that, because the underlying compensability issue had been decided against the claimant, any remaining medical services claims were to be decided by the director. We stated that "the director had authority to review this claim [for medical services] even though it originally had been raised in conjunction with a claim that came within the Board's jurisdiction." 156 Or App at 462. Both *Shipley* and *Langley* involved the interpretation of different statutory provisions. Furthermore, this case is factually distinguishable in that here compensability was still technically at issue at the time of the hearing. Rather, this case is more analogous to *SAIF v. Pendergast-Long*, 155 Or App 633, 637, 964 P2d 1099, *adhered to as supplemented* 155 Or App 633, 964 P2d 1099 (1998), in which we distinguished *Shipley* and held that the Board had jurisdiction over a medical services claim because the compensability of the underlying condition was still at issue.

history and ignores relevant agency interpretation. The majority applies the *PGE* framework to the term "proceedings" in ORS 656.262(11)(a) and, after finding the text and context ambiguous, finds its answer in the legislative history. According to the majority, "the legislative history establishes that, once a dispute is properly before the Hearings Division, any subsequent narrowing of the issues to just the penalty issue does not divest the Hearings Division of jurisdiction over the dispute." 180 Or App at 305. In other words, jurisdiction is permanently frozen as of the time of the request for hearing. The converse of this is that, once a dispute is properly before the director (*i.e.*, a dispute solely involving issue of penalties), any subsequent compensation issues raised before the Hearings Division does not divest the director of jurisdiction over the penalty dispute.

The majority may be correct that "proceedings" refers to the entire course of the workers' compensation process and that "proceedings" *begin* with a claimant filing a request. Neither of those holdings answers the question of when the legislature intended jurisdiction to vest for purposes of ORS 656.262(11)(a). If "proceedings" refers to the entire course of the process, we must determine at what point during that entire course jurisdiction permanently vests: the beginning, the end, or some point in between. The statute is ambiguous on this point, and therefore we must search for the legislature's intent in the legislative history. *PGE*, 317 Or at 611-12.

The legislative policy, as demonstrated by the legislative history cited by the majority, is that the legislature "[did not] want the *hearings process* clogged up with 'penalty only' issues." Tape recording, Interim Special Committee on Workers' Compensation, SB 1197, May 3, 1990, Tape 1, Side B (statement of Cecil Tibbitts) (emphasis added). The committee also made clear that, "if you have another issue that you need to take to hearing and you also have a penalty issue, that would go through the regular process as always." *Id*. The majority relies on this statement and cherry picks the ensuing comments by Representative Mannix for proof that the legislature was concerned with the outset of the process, and therefore jurisdiction is determined when the request for hearing is made. 180 Or App at 305. However, read in their

entire context, the comments concern the merits of a system with bifurcated proceedings, where penalty issues would be handled only by the director. Neither Mannix nor the committee members were deciding the point after which jurisdiction could not be lost. The only interpretation of ORS 656.262(11)(a) that appears inconsistent with the legislature's intent not to clog the *hearing process* with penalty only issues is the majority's. According to the majority, even if penalties are the only issue at the time the hearing commences, the Hearings Division nonetheless maintains jurisdiction as long as there were other issues at the time of filing.

Another problem with this holding is that it is contrary to OAR 436-060-0155, which was promulgated by the director pursuant to ORS 656.262(11). OAR 436-060-0155(6) provides:

> "The Director will only consider a penalty issue where the assessment and payment of additional amounts described in ORS 656.262(11) is the sole issue of any proceeding between the parties. *If a proceeding on any other issue is initiated before the Hearings Division of the Workers' Compensation Board between the same parties prior to the Director issuing an order under this section, and the Director is made aware of the proceeding, jurisdiction over the penalty proceeding before the Director shall immediately rest with the Hearings Division and result in referral of the proceedings to the Hearings Division.* If the Director has not been made aware of the proceeding before the Hearings Division and issues a penalty order which becomes final, the penalty of the Director will stand." (Emphasis added.)

According to OAR 436-060-0155, jurisdiction is not frozen when the request is filed, but rather may change during the proceeding at any time prior to the issuance of an order. To the contrary, the majority holds that exclusive jurisdiction lies with the director if, at the time the request for penalties is made,[4] penalties are the sole issue. The director's interpretation of a rule is entitled to deference if it is not inconsistent

---

[4] OAR 436-060-0155(2) provides that "[r]equests for penalties under this section must be in writing, stating what benefits have been delayed or remain unpaid and mailed or delivered to the Division within 180 days of the alleged violation."

with legislative policy. *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 140-43, 881 P2d 119 (1994).

Because I believe that the majority's interpretation unnecessarily overrules precedent and is inconsistent with the language of the statute, the statute's policy as expressed by the legislature, and the director's proper implementation of that policy, I concur in the result reached by the majority but not in its analysis.

Edmonds and Schuman, JJ., join in this concurrence.