Argued and submitted September 10, 1993, reversed and remanded September 14, respondents' motion for reconsideration filed October 13 allowed by opinion December 21, 1994

See 132 Or App 103 (1994)

Ellis THOMPSON,
an individual,
and Ellis Thompson Corporation,
an Oregon corporation,
*Respondents,*

*v.*

TELEPHONE & DATA SYSTEMS, INC.,
an Iowa corporation;
United States Cellular Corporation,
a Delaware corporation,
*Appellants,*

*and*

AMCELL OF ATLANTIC CITY, INC.,
a New Jersey corporation,
*Respondent.*

(9005-03082; CA A74557)

881 P2d 819

Alan N. Salpeter argued the cause for appellants. With him on the briefs were Michele Odorizzi, Mayer, Brown & Platt, Stephen S. Walters, Charles F. Adams and Stoel Rives Boley Jones & Grey.

N. Robert Stoll argued the cause for respondents Ellis Thompson and Ellis Thompson Corporation. With him on the brief were Sandra L. Kohn, David A. Lokting and Stoll, Stoll, Berne & Lokting.

Michael D. Hays argued the cause for respondent Amcell of Atlantic City, Inc. With him on the brief were Dow, Lohnes & Albertson, Jeffrey W. Ring, G. Frank Hammond and Heller, Erhman, White & McAuliffe.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

LANDAU, J.

## LANDAU, J.

Plaintiffs are the majority owners of a Federal Communications Commission (FCC) license to operate the cellular telephone system for the Atlantic City, New Jersey area. Defendants Telephone & Data Systems, Inc. (TDS) and Amcell of Atlantic City, Inc. (Amcell) own minority interests in the license. Plaintiffs entered into separate agreements with both TDS and Amcell concerning the ownership and control of the license. A dispute arose between plaintiffs and defendants concerning those agreements. Plaintiffs brought this action to declare that their agreement with TDS is unenforceable. Plaintiffs and Amcell moved for judgment on the pleadings on plaintiffs' claim, and the trial court granted that motion. Meanwhile, TDS brought counterclaims against plaintiffs and cross-claims against Amcell. The trial court dismissed those claims and entered judgment for plaintiffs. TDS appeals, and we reverse.

We state the facts as alleged in the complaint. In April, 1986, plaintiff Ellis Thompson (Thompson), a retired Oregon welder, and a number of other applicants entered an FCC lottery to obtain a license to construct and operate the cellular telephone system for Atlantic City. Before the FCC actually held the lottery, the applicants entered into what they called a "Cellular Management Services agreement" (CMS agreement). The CMS agreement itself is neither quoted in nor attached to any pleading. The complaint paraphrases its relevant provisions as follows:

> "1) upon award of the License to a party a partnership would be formed, comprised of the parties to the CMS Agreement, which would hold the License and own the System; 2) the party to whom the license was awarded (Thompson) would hold a controlling 50.01% equity interest in the partnership; 3) the remaining parties to the CMS Agreement would collectively hold a 49.99% equity interest in the partnership, divided among them on a pro rata basis; and 4) that a two-thirds supermajority vote, based upon the ownership interests of the parties to the CMS Agreement, is required prior to any transfer of control of the License * * *."

Thompson won the lottery. He formed a corporation, plaintiff Ellis Thompson Corporation (ETC), of which Thompson was the sole shareholder, and then transferred his

interest in the license to the corporation. He then sought an FCC construction permit and license to operate the system. Apparently to help finance that endeavor, Thompson and ETC entered into an agreement with TDS (TDS agreement). That agreement, too, is not quoted in or attached to any pleading. The complaint generally describes the TDS agreement, along with various amendments to it, as requiring Thompson to use his best efforts to form a partnership to act as licensee of the system, with ETC acting as general partner and holding a 10 percent interest, with Thompson acting as a limited partner owning a 40.01 percent interest, and with the remaining applicants acting as limited partners owning, collectively, a 49.99 percent interest. The complaint further describes the TDS agreement as requiring Thompson to grant ETC's and Thompson's interests in the license to a wholly-owned subsidiary of TDS.

Meanwhile, Amcell acquired the interests of a number of the other applicants, so that it owned a total interest in the license of 35 percent. Amcell then notified Thompson that his agreement with TDS violated the original CMS agreement. Amcell asserted that Thompson and ETC could not transfer control of the license without Amcell's approval, because the CMS agreement requires approval by two-thirds of the partnership interests of any such transfer of control. Amcell also asserted that it could not be relegated to the role of a limited partner, because the CMS agreement entitled it to a general partnership interest.

Thompson agreed with Amcell. He and ETC then filed this action, seeking a declaration that his agreement with TDS is unenforceable because, among other things, it conflicts with Thompson's obligations under the CMS agreement. Plaintiffs named both TDS and Amcell as defendants.

TDS answered, admitting that Thompson and the other applicants entered into the CMS agreement, but denying plaintiffs' characterization of the terms of that agreement, saying only that "the agreement speaks for itself." Similarly, TDS admitted that it entered into an agreement with Thompson, but denied plaintiffs' characterization of the terms of that agreement, again saying only that "the agreement speaks for itself." Amcell answered, admitting that plaintiffs are entitled to the relief they seek.

Plaintiffs and Amcell then moved for judgment on the pleadings, arguing that the terms of the CMS agreement rendered unenforceable Thompson's agreement with TDS. Plaintiffs and Amcell attached to their motions copies of both agreements and, in their briefs in support of their motions, they referred to a number of provisions in the agreements that were not quoted, paraphrased or referred to in their complaint. TDS opposed the motions, arguing that a motion for judgment on the pleadings was inappropriate in the light of the fact that neither of the contracts on which the motions were predicated appeared in the pleadings. TDS also argued that, even if the contracts properly could be considered, they did not provide a basis on which plaintiffs and Amcell were entitled to prevail as a matter of law, because the terms of the agreements are ambiguous and require evidence of the parties' intentions as to their meaning. The trial court granted plaintiffs' and Amcell's motions.

Before the trial court entered an order granting the motions, however, TDS requested leave to file counterclaims against plaintiff and cross-claims against Amcell. TDS alleged that, some time after plaintiffs entered into their agreement with TDS, Amcell began purchasing its interest in the license through a series of misrepresentations about TDS's intentions. TDS itself then attempted to acquire the minority interest in the license. It was, however, able to acquire only a 6 percent interest. TDS alleged that Amcell then entered into a series of agreements with Thompson under which Amcell agreed to provide switching and other services for the system. At the same time, TDS alleges, Amcell secretly entered into a second agreement with Thompson, which granted Amcell the option to purchase Thompson's interest in the license, and a third agreement, in which Amcell agreed to indemnify Thompson for any liability Thompson might incur as a result of violating his agreement with TDS. On the basis of those allegations, TDS requested a declaration that Amcell cannot block plaintiffs' transfer of control to TDS. It also challenged the validity of Amcell's acquisition of its interest in the license and asked for a judicial determination of the extent of Amcell's interest. It further asserted that it was entitled to damages from Amcell for its tortious interference with plaintiffs' contract with TDS and with plaintiffs' future business relationship with TDS, and damages from Thompson and

Amcell for their breach of fiduciary duty to TDS as a minority shareholder in the license.

Plaintiffs and Amcell moved to dismiss the counterclaims and cross-claims. The trial court granted the motions, concluding that the declaratory judgment counterclaim and cross-claim were untenable, given its prior rulings on plaintiffs' declaratory judgment claim, that the allegations in TDS's tortious interference claims were insufficient as a matter of law, and that the breach of fiduciary claim was time-barred. The trial court then entered judgment in favor of plaintiffs and Amcell.

TDS asserts fifteen assignments of error. In the first seven, TDS challenges the trial court's ruling on the motions for judgment on the pleadings. The remaining assignments concern the trial court's dismissal of the counterclaims and cross-claims.

■ We begin with the assignments concerning the trial court's disposition of the motions for judgment on the pleadings. TDS first argues that the trial court erred in granting the motions, because its conclusions expressly were based on its interpretation of documents that were not part of the pleadings. According to TDS, a motion for judgment on the pleadings may be granted only on the basis of what is alleged in the pleadings, and it is improper to rely on any matters not contained in those pleadings. In this case, TDS contends, the trial court incorrectly relied on the text of both the CMS agreement and the TDS agreement, neither of which were so much as quoted in the pleadings, in resolving the parties' dispute about the meaning of those agreements.

Plaintiffs and Amcell concede that the agreements were neither quoted in nor attached to any pleading. They nevertheless argue that it was permissible for the trial court to refer to those documents, because they "are referred to repeatedly in [the] complaint and are central to an understanding of the case and the various claims asserted." Cited as authority for that proposition is a federal decision, *Fudge v. Penthouse Int'l, Ltd.*, 840 F2d 1012 (1st Cir), *cert den* 488 US 821, 109 S Ct 65, 102 L Ed 2d 42 (1988). Plaintiffs and Amcell further argue that the trial court was entitled to rely on the agreements, because they are part of pleadings in an

Illinois action between the same parties. According to plaintiffs and Amcell, it was appropriate for the trial court to take judicial notice of the agreements under those circumstances.

 We agree with TDS that the trial court erred in relying on documents that were not part of the pleadings. ORCP 21 B provides:

> "After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings."

Motions for judgment on the pleadings are not generally well-regarded by the courts, because hasty or imprudent use of the procedure can conflict with the policy of ensuring litigants a full and fair opportunity to try their claim or defense. *See Cole v. Zidell Explorations, Inc.*, 275 Or 317, 322, 550 P2d 1194 (1976); *Salem Sand & Gravel Co. v. City of Salem*, 260 Or 630, 636, 492 P2d 271 (1971). Accordingly, the motion is only allowable

> "when the pleadings, taken together, affirmatively show that plaintiff has no cause of action against the defendant or when defendant affirmatively alleges a complete defense which is admitted or not denied by a reply." *Scott & Payne v. Potomac Ins. Co.*, 217 Or 323, 330, 341 P2d 1083 (1959); *see also Rexius Forest By-Products v. A & R Lumber Sales*, 112 Or App 114, 117, 827 P2d 1359 (1992); *Beason v. Harcleroad*, 105 Or App 376, 379, 805 P2d 700 (1991).

If it is necessary for the court to refer to evidence outside the pleadings to decide the motion, the court cannot decide the matter "on the pleadings," and the motion must be denied. In *Olsen v. City of Coburg*, 111 Or App 530, 826 P2d 101 (1992), for example, the plaintiff police officer brought an action for unpaid overtime compensation. In its answer, the defendant City of Coburg alleged that its personnel manual provided that all police officers are exempt from overtime compensation. Then, on the basis of that allegation, the defendant moved for judgment on the pleadings. The trial court allowed the motion, and we reversed:

> "We conclude that the city's affirmative defense[] * * * simply pleads evidence, *i.e.*, the personnel manual provision and a legal conclusion that the city claims follows from that evidence. The defense does not, on its face, resolve the factual

question of what the contract terms are; rather, it creates that question." 111 Or App at 533.

In this case, as in *Olsen*, plaintiffs' complaint simply alleges what they contend the CMS and TDS agreements provide, and then draws legal conclusions from those allegations. TDS did not admit to plaintiffs' characterization of what the agreements say. Accordingly, as in *Olsen*, plaintiffs' allegations do not, on the face of the pleadings alone, resolve the question of what the terms of those agreements are. The only way to resolve that question is to refer to the agreements, which are not part of the pleadings.

Plaintiffs' and Amcell's arguments that the trial court was free to refer to those agreements anyway are not persuasive. First, their reliance on *Fudge v. Penthouse Int'l, Ltd., supra*, is misplaced. In that case, the plaintiffs alleged in their complaint that the defendant had libelled them in a magazine article, but they did not incorporate any portion of the article itself into the complaint. The defendant moved to dismiss for failure to state a claim under FRCP 12(b)(6), attaching a copy of the article. When the plaintiffs complained that the article was not part of the pleadings, the court said that, under the federal rules, when a plaintiff refers to a document in its complaint but does not quote it or incorporate it, the plaintiff may not complain when the defendant does so in a motion to dismiss. In that context, the court held that, because the plaintiffs had repeatedly referred to the article, because it was so central to their case, and because the plaintiffs did not dispute what the article actually said, they could not object to the defendant's reliance on it in moving to dismiss the plaintiffs' complaint. The court did not say that the plaintiffs could have brought a motion for judgment on the pleadings on their libel claim, without having quoted or attached the article on which the claim was based, and over the defendant's objections as to what the article actually said. That is the case here, and *Fudge v. Penthouse Int'l, Ltd., supra*, does not speak to that issue. Even if *Fudge* said what plaintiffs and Amcell suggest it does, the fact remains that our decisions, in particular, *Olsen v. City of Coburg, supra*, are to the contrary.

Second, their reliance on the notion that the contents of the agreement may be incorporated into the pleadings in this

action by judicial notice of the agreements attached to pleadings filed by the parties in the Illinois action is equally misplaced. Even assuming, for the sake of argument, that it is permissible to take judicial notice of the contents of an agreement attached to a pleading from a proceeding in another jurisdiction, it remains impermissible to do that on a motion for judgment on the pleadings. In this case, the pleadings reflect a dispute as to the contents of the CMS and TDS agreements. The actual contents of those agreements can only be resolved by reference to those agreements. Whether that is accomplished by proof or by judicial notice, the agreements constitute evidence not contained in the complaint or the answer. Hence, the trial court erred in relying on them in ruling on the motions for judgment on the pleadings. Because that error requires reversal of the trial court's decision to grant the motions, we do not address TDS's other assignments of error concerning those motions.

TDS's remaining assignments of error relate to the trial court's dismissal of TDS's counterclaims and cross-claims. TDS first contends that the trial court erred in dismissing its claims for breach of contract and declaratory relief as to its obligations under the CMS and TDS agreements. The trial court ruled that its decision with respect to plaintiffs' and Amcell's motions for judgment on the pleadings disposed of those two claims. The trial court also ruled that TDS could not ask for a declaration as to Amcell's interest in the license, because TDS had alleged in the Illinois lawsuit that Amcell owned a 36 percent interest in the license. TDS argues that it was improper for the court to have dismissed those claims for the same reasons that the court erred in granting the motions for judgment on the pleadings. TDS also argues that the trial court could not properly rely on allegations in the Illinois proceeding to dispose of its claim in this lawsuit. According to TDS, in the Illinois lawsuit, it only alleged Amcell's interest in the license "on information and belief," and, in any event, it is improper to refer to those allegations in deciding a motion to dismiss.

In reviewing a motion to dismiss for failure to state a claim, we assume the truth of all the allegations in the pleading against which the motion is tendered. *Glubka v. Long*, 115 Or App 236, 238, 837 P2d 553 (1992). In this case,

the trial court's decision expressly was based, not on the assumed truth of the allegations in TDS's answer, counter-claims and cross-claims, but rather on the allegations of plaintiffs' complaint and on the language of the CMS and TDS agreements, which were not part of any of the pleadings. That is not a proper basis for a decision to grant a motion to dismiss for failure to state a claim.

For similar reasons, the trial court erred in predicating its decision on TDS's allegations in the Illinois proceeding. Assuming, for the sake of argument, that an allegation "*on information and belief*" constitutes some sort of admission, the fact remains that the pleading in the Illinois proceeding is evidence not to be found in the pleadings in this case. It is, therefore, not properly the basis for a dismissal under ORCP 21 A(9) of TDS's claim against Amcell for declaratory relief. *See Dotson v. Smith,* 307 Or 132, 138, 764 P2d 540 (1988). The trial court erred in dismissing TDS's contract claims.

■ TDS next contends that the trial court erred in dismissing its cross-claims against Amcell for tortious interference with contract and tortious interference with prospective advantage. The trial court concluded that those claims could not be maintained as a matter of law, because its prior ruling on the motion for judgment on the pleadings — which it characterized as the "law of the case" — precluded the claims, and because the conduct about which TDS complained does not constitute tortious interference. TDS argues that the reversal of the trial court's decision on the motion for judgment on the pleadings disposes of the trial court's first justification, and the trial court simply was wrong on its second justification, because the complaint alleges that Amcell interfered with TDS's agreement with Thompson by means of fraud, and that constitutes tortious interference. Amcell argues that, even if the trial court incorrectly based its decision to dismiss the cross-claim on the law of the case, the dismissal was proper, because TDS was not the party defrauded by Amcell and is, therefore, precluded from asserting fraud as the basis for its tortious interference claim.

To the extent that the trial court relied on its decision on the motion for judgment on the pleadings as the basis for dismissing the tortious interference cross-claims, the trial

court erred, for the reasons we already have stated. To the extent that the trial court relied on its conclusion that TDS's allegations were inadequate as a matter of law, the trial court also erred.

■■■ To state a claim for tortious interference with contract or prospective business advantage, there must be pleaded a wrongful interference with a contractual or business relationship.[1] An interference is "wrongful" if it is carried out in pursuit of an improper motive or by improper means. *Empire Fire & Marine Ins. v. Fremont Indemnity*, 90 Or App 56, 62, 750 P2d 1178 (1988). "Improper means" must be independently wrongful by reason of statutory or common law, beyond the mere fact of the injury complained of. *Conklin v. Karban Rock, Inc.*, 94 Or App 593, 601, 767 P2d 444, *rev den* 307 Or 719 (1989).

■■■ In this case, TDS alleges that Amcell used fraud to acquire its interest in the license and then bribed Thompson to breach his agreement with TDS. Interference with a contract or prospective advantage by means of fraud is wrongful in its own right. *Conklin v. Karban Rock, Inc., supra*, 94 Or App at 601. We are unpersuaded by Amcell's argument that such fraud is irrelevant merely because it was not directed against TDS directly. TDS is not suing Amcell for fraud, but rather for tortious interference by means of fraud. Regardless of who Amcell defrauded, TDS alleges that that fraud was the mechanism of its interference with TDS. Those allegations provide the necessary element of improper means that the trial court found lacking. The trial court erred in dismissing the tortious interference claims.

■■■ TDS next contends that the trial court erred in dismissing its counterclaim against Thompson and its cross-claim against Amcell for breach of fiduciary duty. TDS alleged that Thompson and Amcell had entered into a series of secret option and indemnity agreements, which created a conflict of

---

[1] Liability for intentional interference with contract arises where the defendant, without a privilege to do so, purposely causes a third person to breach a contract with the plaintiff. Liability for intentional interference with prospective business advantage, on the other hand, does not depend on the existence of a contract. It arises when the defendant, without a privilege to do so, induces a third person not to enter into or to continue a business relationship with the plaintiff. The elements of both claims are otherwise identical. *Top Service Body Shop v. Allstate Ins. Co.*, 283 Or 201, 206, 582 P2d 1365 (1978).

interest with respect to Thompson's fiduciary obligations to the other minority interest holders and which led to the execution of the agreement that Amcell would provide the system switching and other services. The trial court dismissed those claims on the ground that they are barred by Oregon's two-year statute of limitations for general tort actions. ORS 12.110. The trial court reasoned that, because Thompson entered those agreements with Amcell more than two years before TDS filed its counterclaim and cross-claim, those claims are time-barred. Apparently oblivious to the potential for being hoist by its own petard, TDS argues that, because the CMS agreement requires the application of Ohio law, the Oregon conflict of laws statute, ORS 12.430, requires the application of the Ohio four-year statute of limitations. RC 2305.09(D). In the alternative, TDS argues that, even if the Oregon statute applies, there remains a factual issue as to when TDS became aware of the allegedly secret agreements that constituted the breach of duty to the minority interest holders.

▪ If, as TDS has so vigorously asserted, the trial court could not properly take cognizance of the terms of the CMS agreement in disposing of plaintiffs' and Amcell's motion for judgment on the pleadings, we do not understand how it is appropriate to refer to the same agreement to save their breach of fiduciary duty claim from dismissal on a motion brought under ORCP 21 A(9). In both cases, the court is constrained to rely on allegations contained in the pleadings only. TDS's reliance on the CMS agreement as the basis for invoking a more forgiving statute of limitations is unavailing.

▪ TDS correctly argues, however, that there is a factual question as to when TDS became aware of the allegedly secret agreements between Thompson and Amcell, which created the conflict of interest that forms the basis of TDS's claims. The limitation period for breach of fiduciary duty claims does not begin to run until the party asserting the claim knows or reasonably should know that he or she has been damaged by the fiduciary's wrongful conduct. *Condon v. Bank of California*, 92 Or App 691, 694-95, 759 P2d 1137 (1988). In this case, TDS alleges that the agreements that created the conflict of interest that forms the basis of the breach of fiduciary duty claims were "secret and undisclosed." Plaintiffs and Amcell

dispute the fact that TDS did not know of the terms of those agreements until less than two years before the filing of the claims. However, in making that argument, plaintiffs and Amcell rely on correspondence between the parties, on admissions in the Illinois litigation and on other documents that simply are not part of the pleadings. Such evidence cannot provide the basis for granting dismissal of claims under ORCP 21 A(9).

Plaintiffs and Amcell assert that, at oral argument on the motion to dismiss, counsel for TDS admitted that TDS had "suspicions" more than two years before the lawsuit that Thompson and Amcell had entered into some sort of deal. TDS responds that, although it had vague suspicions, it did not know that Thompson and Amcell had entered into agreements that actually compromised the interests of minority interest holders until after this action was initiated. We agree with TDS that counsel's admission that TDS had some "suspicions" about the relationship between Thompson and Amcell is insufficient to justify dismissal of the breach of fiduciary duty claims on statute of limitations grounds. The admissions certainly raise a question whether TDS reasonably should have known about the alleged conflict of interest. However, precisely when it discovered or should have discovered a claim is an issue of fact that cannot be resolved on a motion to dismiss. *Peterson v. Mult. Co. Sch. Dist. No. 1*, 64 Or App 81, 85, 668 P2d 385, *rev den* 295 Or 773 (1983). The trial court erred in dismissing the breach of fiduciary claims as time-barred.

TDS also assigns error to the trial court's refusal to allow TDS to amend its counterclaims and cross-claims following their dismissal. Because we have determined that the trial court erred in dismissing those claims, we need not address that assignment.

Reversed and remanded.