Argued and submitted March 4, affirmed July 27, 2005

Robert E. KELLY
and Virginia L. Kelly,
*Appellants,*

*v.*

OLINGER TRAVEL HOMES, INC.,
an Oregon corporation,
*Defendant,*

*and*

FLEETWOOD MOTOR HOMES
OF CALIFORNIA, INC.,
an unregistered foreign corporation,
*Respondent.*

0003-02829; A122211

117 P3d 282

Danny H. Gerlt argued the cause and filed the briefs for appellants.

Vicki L. Smith argued the cause for respondent. On the brief were Thomas W. Sondag and Lane Powell Spears Lubersky LLP.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.*

BREWER, C. J.

_____
* Armstrong, J., *vice* Ceniceros, S. J.

## BREWER, C. J.

This action arises from the sale of a motor home that was manufactured by Fleetwood Motor Homes of California, Inc. (defendant) and sold to plaintiffs by Olinger Travel Homes, Inc. (Olinger). In their complaint, plaintiffs asserted several claims against Olinger that the trial court abated pending arbitration, including a claim alleging that the motor home was defective and that plaintiffs justifiably revoked their acceptance of it. In the ensuing arbitration award, plaintiffs recovered damages from Olinger related to their revocation of acceptance. Plaintiffs also asserted two claims against defendant: (1) a claim for breach of express warranty under the Uniform Commercial Code (UCC) and (2) a claim for violation of the Oregon Assumed Business Names Act (ABNA), ORS 648.005 to 648.990. After the matter was returned to the trial court's docket following arbitration of the claims against Olinger, defendant filed a motion for judgment on the pleadings on the breach of warranty claim and a motion for summary judgment on the ABNA claim. The trial court granted both motions, and plaintiffs appeal from the ensuing judgment for defendant. We affirm.

The following facts are not in dispute. Plaintiffs originally filed a complaint in the trial court against both Olinger and defendant. The complaint included two claims for relief. The first claim was for breach of contract and consisted of four counts, the first two of which are relevant here.[1]

The first count was for revocation of·acceptance and damages. In that count, plaintiffs alleged that Olinger had delivered a motor home that did not conform to the terms of the sales agreement, that plaintiffs accepted the motor home without discovering its defects, that the defects materially impaired the value of the motor home, and that plaintiffs justifiably revoked their acceptance of the motor home. Plaintiffs also alleged that, under ORS 72.7110,[2] they were entitled to cancel the contract, recover the purchase price of the

---

[1] The third and fourth counts were directed exclusively towards Olinger and dropped out of this case after the arbitrators awarded plaintiffs damages based on the first count.

[2] ORS 72.7110 provides, in part:

"(1) Where the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance then with respect to any

motor home and incidental and consequential damages, and obtain a lien against the motor home for the amount of the purchase price.

The second count was for breach of express warranty. Unlike the first count, in which plaintiffs sought damages only from Olinger, the second count was directed against both Olinger and defendant. In the second count, plaintiffs alleged that Olinger and defendant each had made and breached express warranties. Plaintiffs sought damages for those breaches under ORS 72.7140, the UCC provision governing a "[b]uyer's damages for breach in regard to accepted goods." Specifically, plaintiffs sought to recover the difference between the fair market value of the motor home as warranted and the fair market value of the motor home with the defects, as well as their incidental and consequential damages.

The second claim for relief did not involve the motor home at all. In it, plaintiffs alleged that defendant had violated the ABNA by doing business in Oregon and using its corporate name, "Fleetwood Motor Homes of California, Inc.," which is not registered with the Oregon Secretary of State. Plaintiffs did not allege that they were harmed or confused by defendant's use of its corporate name. Instead, they asserted that, in certain proceedings—such as this one—against a business using a name that is not registered with the Secretary of State, ORS 648.135(2) authorizes the plaintiff to recover the greater of $500 or the plaintiff's actual costs

goods involved, and with respect to the whole if the breach goes to the whole contract as provided in ORS 72.6120, the buyer may cancel and whether or not the buyer has done so may in addition to recovering so much of the price as has been paid:

"(a) 'Cover' and have damages under ORS 72.7120 as to all the goods affected whether or not they have been identified to the contract; or

"(b) Recover damages for nondelivery as provided in ORS 72.7130.

"* * * * *

"(3) On rightful rejection or justifiable revocation of acceptance a buyer has a security interest in goods in the possession or control of the buyer for any payments made on their price and any expenses reasonably incurred in their inspection, receipt, transportation, care and custody and may hold such goods and resell them in like manner as an aggrieved seller as provided in ORS 72.7060."

incurred in discovering the defendant's real and true name.[3] Plaintiffs sought $500 plus costs and attorney fees on their ABNA claim.

After plaintiffs filed their complaint, Olinger and defendant filed a motion to abate the action to allow the parties to arbitrate plaintiffs' claims under an arbitration provision in the motor home sales contract. The trial court granted the motion to abate. As noted, however, only the claims against Olinger were arbitrated. The arbitrators concluded that plaintiffs' claims against defendant were not covered by the contract and that defendant therefore could not compel arbitration.

As to plaintiffs' claims against Olinger, the arbitrators determined that plaintiffs had justifiably revoked their acceptance of the motor home and awarded damages accordingly. Specifically, the arbitrators concluded that plaintiffs were entitled to recover the purchase price with interest, as well as their costs. In addition, the arbitrators awarded plaintiffs a possessory security interest in the motor home until the judgment was paid. The arbitrators directed plaintiffs to return the motor home to Olinger after the judgment had been satisfied. The arbitrators also determined that, although plaintiffs were entitled to retain possession of the motor home pending satisfaction of the judgment, the risk of loss would rest with Olinger.

Plaintiffs delivered the arbitration award to the trial court clerk, and the clerk entered the award in the register under *former* ORS 36.350 (2001), *repealed by* Oregon Laws 2003, chapter 598, section 57,[4] which prescribed the prerequisites for entering judgment on an arbitration award. The statute provided that, after those prerequisites were

---

[3] ORS 648.135(2) provides:

"In any action or suit in which the cause of action arises out of business that the defendant carried on, conducted or transacted in violation of ORS 648.007 [requiring registration of assumed business names and service marks], the plaintiff shall be entitled to recover $500 or the actual costs that the court determines that the plaintiff reasonably incurred to ascertain the real and true name of the defendant, whichever is greater. The court may award reasonable attorney fees to the prevailing party in an action under this subsection."

[4] The award was registered in 2001.

met, "judgment shall be entered as upon the verdict of a jury, and execution may issue thereon, and the same proceedings may be had upon the award with like effect as upon a verdict in a civil action." After the judgment was entered, defendant satisfied it on behalf of Olinger.

When the trial court entered judgment against Olinger, it also reinstated the case against defendant on its active calendar. Defendant then moved for partial judgment on the pleadings. In that motion, defendant argued that each of the counts in plaintiffs' first claim for relief was an alternative theory of recovery and that, because plaintiffs had obtained judgment against Olinger on the first count, the second count—the only count directed against defendant—should be dismissed. In support of that argument, defendant attached a copy of the arbitration award to its motion. Plaintiffs responded that, under the UCC, they were entitled to recover both the purchase price *and* damages for breach of warranty, as well as incidental and consequential damages. Plaintiffs attached transcripts from the arbitration proceeding as an exhibit to their response to the motion.

Shortly before the hearing on the motion, plaintiffs moved to amend their complaint to include claims under the Oregon Consumer Warranty Act, ORS 72.8010 to 72.8200, and the Magnuson Moss Warranty Act, 15 USC §§ 2301 to 2312. The trial court never ruled on that motion. Instead, the court granted defendant's motion for partial judgment on the pleadings, concluding that plaintiffs could not recover damages for breach of warranty in addition to the relief granted in the judgment on the arbitration award.

After the trial court entered judgment for defendant on plaintiffs' breach of warranty claim, both parties moved for summary judgment on plaintiffs' remaining claim under the ABNA. At the hearing on the cross-motions for summary judgment, the parties represented that there were no material issues of fact and that the only issue was one of law, namely, whether the corporate name of a foreign corporation that is not registered with the Secretary of State is an assumed business name under ORS 648.005(1). The trial court concluded that it is not and granted defendant's motion for summary judgment.

On appeal, plaintiffs assign error to the trial court's rulings on both the ORCP 21 B motion and the summary judgment motion. We first address defendant's ORCP 21 B motion for partial judgment on the pleadings. We note that, although the motion was styled as an ORCP 21 B motion, neither the parties nor the trial court have treated it as such. An ORCP 21 B motion for judgment on the pleadings is appropriate only when, on the face of the pleadings, the plaintiff has no valid claim. *Curtis v. MRI Imaging Services II*, 327 Or 9, 11, 16, 956 P2d 960 (1998). "If it is necessary for the court to refer to evidence outside the pleadings to decide the motion, the court cannot decide the matter 'on the pleadings,' and the motion must be denied." *Thompson v. Telephone & Data Systems, Inc.*, 130 Or App 302, 309, 881 P2d 819, *adh'd to as modified on recons*, 132 Or App 103, 888 P2d 16 (1994).

Here, the parties and the trial court have assumed that defendant's motion could be resolved with reference to the arbitration award. However, that assumption is mistaken because the arbitration award constituted evidence outside the pleadings. *See* ORCP 13 A (defining "pleading"). When a motion has been styled as a motion for judgment on the pleadings but the parties have introduced evidence outside the pleadings and the trial court has relied on that evidence in ruling on the motion, we have treated the motion as one for summary judgment or directed verdict. *Jones v. Emerald Pacific Homes, Inc.*, 188 Or App 471, 480, 71 P3d 574, *rev den*, 336 Or 125 (2003). We do so here.

We conclude that the parties essentially treated the motion as one for summary judgment. In reviewing a grant of summary judgment, we view the record in the light most favorable to the nonmoving parties, in this case plaintiffs, to determine whether a genuine issue of material fact exists and, if not, whether the moving party is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997).

Plaintiffs first contend that defendant is not entitled to judgment as a matter of law because plaintiffs' successful revocation of acceptance against Olinger did not preclude them from seeking damages from defendant for "nondelivery" under ORS 72.7130, for breach of warranty under the

Oregon Consumer Warranty Act, and for breach of warranty under the Magnuson Moss Warranty Act. Defendant counters that plaintiffs have not asserted claims under those statutes. Defendant notes that, in their complaint, plaintiffs alleged only that defendant had breached an express warranty under the UCC and that they were entitled to damages for that breach under ORS 72.7140. Plaintiffs reply that ORS 72.7140 incorporates a claim for breach of warranty under the Oregon Consumer Warranty Act. According to plaintiffs, the damage provisions of the UCC apply to all of ORS chapter 72 and the Oregon Consumer Warranty Act is part of ORS chapter 72. We disagree.

The Oregon Consumer Warranty Act was not enacted as part of ORS chapter 72. The explanatory note following ORS 72.8010, the first provision in the Oregon Consumer Warranty Act, states, "[ORS] 72.8010 to 72.8200 were enacted into law by the Legislative Assembly but were not added to or made a part of ORS chapter 72 or any series therein by legislative action." Furthermore, by its terms, ORS 72.7140 does not incorporate the Oregon Consumer Warranty Act. Thus, plaintiffs did not, by citing ORS 72.7140 in their complaint, allege entitlement to damages under the Oregon Consumer Warranty Act.

Nor did plaintiffs assert entitlement to damages under the Oregon Consumer Warranty Act, the Magnuson Moss Warranty Act, and for nondelivery under ORS 72.7130 by citing those statutes in the amended complaint that plaintiffs sought leave to file. The trial court never ruled on plaintiffs' motion for leave to amend their complaint, and plaintiffs do not assign error to the trial court's failure to rule on that motion. Accordingly, we reject plaintiffs' contention that they were entitled to damages under the Oregon Consumer Warranty Act, the Magnuson Moss Warranty Act, or for nondelivery under ORS 72.7130.

Thus, the only remaining question is whether plaintiffs were entitled to damages for breach of warranty as against defendant under ORS 72.7140. With respect to that issue, plaintiffs renew their argument that they were entitled to recover both the relief granted by the judgment on the arbitration award and damages for breach of warranty under

ORS 72.7140. Plaintiffs contend that they are entitled to damages for breach of warranty because they were not fully compensated by the judgment on the arbitration award, and the arbitration award resolved only claims against Olinger, not those against defendant.

■ Defendant makes two arguments in response. First, defendant asserts that the UCC does not apply here. Specifically, defendant argues that plaintiffs failed to state a claim for breach of express warranty under ORS 72.3130, because that statute describes the circumstances under which a *seller* creates an express warranty and here defendant was the manufacturer, not the seller. We conclude that the scope of the statute is not so narrow. Defendant sold the motor home to Olinger, and its express warranty can extend to remote purchasers like plaintiffs. *See Dravo Equipment Co. v. German*, 73 Or App 165, 698 P2d 63 (1985) (express warranties may extend to remote purchasers); *Larrison v. Moving Floors, Inc.*, 127 Or App 720, 724, 873 P2d 1092 (1994) (privity of contract not required for express warranties). Accordingly, we reject defendant's first argument.

■ Second, defendant renews its argument that the remedies for revocation of acceptance and breach of warranty are mutually exclusive. As explained below, we agree with that contention. Under ORS 72.7140, only a buyer who has accepted the goods may recover damages. That statute provides:

"(1)   Where the buyer has accepted goods and given notification as provided in ORS 72.6070(3) the buyer may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

"(2)   The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

"(3)   In a proper case any incidental and consequential damages under ORS 72.7150 may also be recovered."

Although the requirement of a buyer who "has accepted goods" is found in subsection (1) and damages for breach of warranty are discussed in subsection (2), we conclude that a buyer must accept goods to recover damages for breach of warranty. Subsection (1) states that a buyer who has accepted goods may recover damages for a "nonconformity of tender." According to comment 2 to UCC 2-714,[5] such nonconformity of tender includes a breach of warranty. And, as subsection (2) makes clear, the usual measure of damages for breach of warranty is the difference between the value of the goods *accepted*, measured at the time and place for *acceptance*, and the value they would have had if they had been as warranted. Thus, a buyer must accept goods to recover for breach of warranty.

Not only must a buyer accept the goods but, because damages for breach of warranty are designed to compensate for the diminished value of retained goods, the buyer also must not revoke acceptance. As comment 1 to UCC 2-714 explains, "This section deals with the remedies available to the buyer after the goods have been accepted *and the time for revocation of acceptance has gone by* * * *." (Emphasis added.) *See also* James J. White and Robert S. Summers, 1 *Uniform Commercial Code* § 10-1, 551 (4th ed 1995) ("[o]nly buyers who have accepted and neither rightfully rejected nor effectively revoked can use 7-714"). Thus, damages for breach of warranty are not available to buyers who have revoked acceptance.

■ Accordingly, the only fact material to plaintiffs' entitlement to damages under ORS 72.7140 is whether they revoked acceptance. ORS 72.7140 does not distinguish between buyers who have been fully compensated by other remedies and those who have not, nor does it distinguish between direct and remote buyers. The statute distinguishes only between buyers who have accepted and retained goods and those who have not. Plaintiffs do not deny that they have successfully revoked acceptance. Instead, plaintiffs argue

---

[5] UCC 2-714 corresponds to ORS 72.7140. Although the Official Comments to the UCC lack the force of law, they are instructive, because the legislature took note of them at the time of adoption, they are consistent with the structure of the UCC, and the purpose of the Official Comments is to promote uniform construction of the UCC. *U.S. National Bank v. Boge*, 311 Or 550, 563, 814 P2d 1082 (1991).

that ORS 72.7200[6] makes clear that cancellation and rescission do not extinguish a claim for damages. However, because plaintiffs have revoked their acceptance of the motor home, they are not entitled to damages for breach of warranty under ORS 72.7140. It follows that the trial court did not err in concluding that defendant was entitled to judgment as a matter of law.

In support of their second assignment of error, plaintiffs argue that the trial court erred in granting defendant's motion for summary judgment on the ABNA claim and in denying plaintiffs' cross-motion for summary judgment. ORS 648.135(2) authorizes a plaintiff to recover $500 in statutory damages if he or she proves that the defendant conducted business under an "assumed business name" in violation of ORS 648.007. Plaintiffs contend that the trial court erroneously concluded that defendant's corporate name, "Fleetwood Motor Homes of California, Inc.," does not qualify as an assumed business name as defined by ORS 648.005. Under plaintiffs' reading of that statute, an assumed business name includes any corporate name that is not registered with the Secretary of State. Defendant responds that the statute is not so broad. According to defendant, the corporate name of a foreign corporation is not an assumed business name if it conforms to the requirements of ORS 60.717. That statute, in its turn, provides that a corporate name must contain a word or abbreviation listed in ORS 60.094(1), and it prohibits certain names that cannot be distinguished from other registered names.

The parties' dispute presents an issue of statutory interpretation that we analyze according to the template prescribed by *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). Under that template, we first consider the statute's text in context and, if necessary, its legislative history and other interpretive aids. *Id.*

---

[6] ORS 72.7200 provides that, "[u]nless the contrary intention clearly appears, expressions of 'cancellation' or 'rescission' of the contract or the like shall not be construed as a renunciation or discharge of any claim in damages for an antecedent breach."

The text of ORS 648.005(1) makes clear that a name is not an assumed business name if it qualifies as a real and true name:

> " 'Assumed business name' means one or more words or numerals, or a combination of words and numerals, that a person uses to identify any business that the person carries on, conducts or transacts, if at the time and place that the person carries on, conducts or transacts the business, the person does not conspicuously disclose the real and true name of each person who is carrying on, conducting or transacting the business. Any name that a person uses to identify a business that includes a word or phrase that suggests the existence of additional owners, such as 'Company,' '& Company,' '& Daughters,' '& Associates,' or a similar word or phrase, is an assumed business name, *unless it is the real and true name of the person that carries on, conducts or transacts the business.*"

(Emphasis added.)

Subsection (6) defines a "real and true name" as

> "(a)   The surname of an individual coupled with a combination of the individual's given names and initials;

> "(b)   The corporate name of a domestic corporation stated in the articles of incorporation or amendment filed with the Office of the Secretary of State *or the corporate name of a foreign corporation as stated under ORS 60.707(1)*;

> "(c)   The name of a foreign or domestic limited partnership stated in the documents filed with the Office of the Secretary of State under ORS chapter 70;

> "(d)   The name of a foreign or domestic limited liability company stated in the documents filed with the Office of the Secretary of State under ORS chapter 63;

> "(e)   The name of a foreign or domestic nonprofit corporation stated in the documents filed with the Office of the Secretary of State under ORS chapter 65;

> "(f)   The name of a foreign or domestic general partnership stated in any documents filed with the Office of the Secretary of State under this chapter; or

"(g)   The name of a foreign or domestic business trust or estate stated in any documents filed with the Office of the Secretary of State."

(Emphasis added.) The parties agree that the name "Fleetwood Motor Homes of California, Inc." is "the corporate name of a foreign corporation." They dispute whether the name is "the corporate name of a foreign corporation *as stated under ORS 60.707(1)*[.]" (Emphasis added.)

ORS 60.707 describes the application process for a foreign corporation to request authority to transact business in Oregon. ORS 60.707(1) prescribes the contents of the application. It provides that the application shall set forth, among other things, "[t]he name of the foreign corporation or, if its name is unavailable for filing in this state, another corporate name that satisfies the requirements of ORS 60.717[.]" Plaintiffs contend that a foreign corporation must have filed the application described in ORS 60.707(1)(a) with the Secretary of State for its name to be "the corporate name of a foreign corporation as stated under ORS 60.707(1)," which, in turn, would qualify its name as a "real and true name" under ORS 648.005(6). We disagree.

The text and context of ORS 648.005 make clear that the corporate name of a foreign corporation need not be registered with the Secretary of State to qualify as a real and true name. ORS 648.005(6) plainly requires all entities other than a foreign corporation to register with the Secretary of State. For example, ORS 648.005(6)(b) provides that the name of a domestic corporation must be "stated in the articles of incorporation or amendment filed with the Office of the Secretary of State." Similarly, ORS 648.005(6)(c) to (g) provide that the real and true name of a limited partnership, a limited liability company, a nonprofit organization, a general partnership, and a business trust or estate must be "stated in the documents filed with the Office of the Secretary of State" under the chapters governing each of those entities.

In contrast, the second clause of ORS 648.005(6)(b) contains no requirement that the real and true name of a foreign corporation be stated in documents filed with the Secretary of State. Instead, that subsection requires only that the real and true name be the corporate name "as stated

under ORS 60.707(1)." The fact that the legislature did not use the phrase "filed with the Office of the Secretary of State" when defining the real and true name of a foreign corporation—but did use it in defining the real and true name of all other entities—indicates that the legislature did not intend to limit the definition of a real and true business name, as applied to a foreign corporation, to corporate names that are filed with the office of the Secretary of State.

That conclusion is supported by the statute's context. Context includes the provisions of related statutes. *Jones*, 325 Or at 411. ORS 648.008(1), which is also part of the ABNA, authorizes the "[o]ptional registration of [a] real and true name." It provides that, "[n]otwithstanding any provision of this chapter, a person that will carry on, conduct or transact business under the real and true name of the person may apply for registration of the real and true name with the Office of the Secretary of State." That provision would have illusory effect if all "real and true names" of businesses were required, by definition, to be registered with the Office of the Secretary of State. Thus, to give effect to that provision, we must reject plaintiffs' proffered interpretation. *See* ORS 174.010 (stating that "where there are several provisions or particulars [a] construction is, if possible, to be adopted as will give effect to all").

In short, the text and context of ORS 648.005 demonstrate that the corporate name of a foreign corporation need not be registered with the Secretary of State to qualify as a real and true name. Instead, to qualify as a real and true name, the name of a foreign corporation must simply be the corporate name "as stated under ORS 60.707(1)." ORS 60.707(1) provides that the name of a foreign corporation must comply with the requirements of ORS 60.717, which, in turn, requires certain words or abbreviations to be used in the name and prohibits certain types of names.[7] Plaintiffs

_____

[7] ORS 60.717 provides, in part:

"(1) Except as provided in subsections (2) and (3) of this section, the Secretary of State shall not authorize a foreign corporation to transact business in this state if the corporate name of the corporation does not conform to ORS 60.094.

"(2) The name of the corporation must contain a word or abbreviation required by ORS 60.094(1) unless the corporate name contains some other

do not argue that defendant's corporate name runs afoul of the requirements in ORS 60.717. Because defendant's corporate name qualifies as a real and true name under ORS 648.005(6), it is not an "assumed business name." It follows that the trial court did not err in granting defendant's motion for summary judgment on plaintiffs' claim under the ABNA.

Affirmed.

---

word, phrase or abbreviation that the laws of the place of incorporation require to denote a person of limited liability.

"(3) If a corporate name, professional corporate name, nonprofit corporate name, cooperative name, limited partnership name, business trust name, reserved name, registered corporate name or assumed business name of active record with the office is not distinguishable on the records of the office from the corporate name of the applicant foreign corporation, the Secretary of State shall not authorize the applicant to transact business in this state unless the foreign corporation states the corporate name on the application for authority to transact business in this state under ORS 60.707 as (name under which incorporated), a corporation of (place of incorporation), the entirety of which shall be the real and true name of the corporation under ORS chapter 648."