***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Argued and submitted April 28, 2022, reversed and remanded
September 20, 2023

MADDEN INDUSTRIAL CRAFTSMEN, INC.,
an Oregon corporation,
*Plaintiff-Respondent,*

*v.*

STEEL BUILDINGS USA, LLC,
an Oregon limited company,
and Derek Bentley,
an individual,
*Defendants-Appellants.*

Multnomah County Circuit Court
19CV21089; A174473

Angel Lopez, Judge.

Douglas Bragg argued the cause for appellants. Also on the briefs was Millard & Bragg.

Thomas M. Christ argued the cause and filed the brief for respondent.

Before Powers, Presiding Judge, and Hellman, Judge, and Nakamoto, Senior Judge.

NAKAMOTO, S. J.

Reversed and remanded.

**NAKAMOTO, S. J.**

Plaintiff Madden Industrial Craftsmen, Inc. (Madden) filed this action against Steel Buildings USA, LLC (SBU) and Derek Bentley, its president, to recover unpaid fees for workers that Madden had provided to SBU for construction projects. As relevant to the appeal, Madden brought two contract-based claims. The first, a claim for breach of contract against SBU, was based on a written contract between SBU and Madden that allegedly covered the provision of the workers. The second was a claim to enforce against Bentley a personal guaranty contained in the written contract. As relevant here, SBU counterclaimed for breach of contract, alleging that SBU and Madden had a separate oral agreement covering the workers that Madden had provided to SBU. Ultimately, the trial court entered a judgment against defendants in Madden's favor, including an award of attorney fees under a provision in the written contract.

SBU's appeal largely concerns whether the trial court erred by granting Madden's motion to dismiss SBU's counterclaim for breach of contract; by granting Madden's subsequent motion for summary judgment on its claim for breach of contract; and by awarding Madden attorney fees. Because the trial court decided Madden's motion to dismiss by erroneously making factual findings and decided Madden's motion for summary judgment by erroneously determining that no disputed issues of fact remained for trial, we reverse and remand.

## MOTION TO DISMISS

The trial court dismissed SBU's breach of contract counterclaim on a motion to dismiss under ORCP 21. Therefore, we "assume the truth of all well-pleaded facts alleged" in SBU's answer and counterclaim, and we give SBU "the benefit of all favorable inferences that may be drawn from those facts." *Boise Cascade Corp. v. Board of Forestry*, 325 Or 185, 198, 935 P2d 411 (1997). The facts are stated consistently with that requirement.

SBU asserts the following in its breach of contract counterclaim: SBU initially entered into a written contract

with Madden in August 2017 for Madden's provision of temporary workers to SBU. Then, SBU's worker leasing arrangement with Barrett Business Services, Inc., a professional employer organization that leased workers to SBU and performed various employee administration tasks for SBU, including providing workers' compensation insurance and benefits to leased employees, was terminated. SBU wished to continue leasing workers for its business, and so in September 2017, SBU and Madden entered into an oral agreement in which Madden would provide SBU with leased workers, which required Madden to pay for workers' compensation to cover the workers and to pay for employee benefits for the workers. The August 2017 written contract specifically stated that it was for Madden's provision of temporary workers to SBU. By contrast, the oral contract addressed a different subject matter, that is, that SBU would lease workers from Madden, and was independent of the earlier written contract. Madden provided leased workers to SBU from September 2017 through July 2018. However, Madden failed to be licensed to provide employee leasing services, to secure appropriate workers' compensation insurance, and to provide the employees with benefits. SBU sustained damages for the "markup" Madden charged SBU for providing the workers, including workers' compensation insurance and employee benefits, in the approximate amount of $70,000.

Madden moved to dismiss SBU's breach of contract counterclaim under ORCP 21 A, arguing that the claims were precluded by *Mayfly Group, Inc., v. Ruiz*, 241 Or App 77, 250 P3d 360, *rev den*, 350 Or 530 (2011). In that case, we reversed the trial court's dismissal of the plaintiff's claims for payment for farm labor that the plaintiff had provided to the defendant. We held that the plaintiff's failure to be licensed as a worker leasing company did not render its contract void or unenforceable. *Id.* at 83-84.[1] Madden also pointed to documents in the public record that would establish that they did carry workers' compensation insurance.

---

[1] SBU has not argued that the written contract with Madden is unenforceable based on Madden's failure to be licensed as a worker leasing company. *Mayfly* does not render Madden's licensure irrelevant to SBU's counterclaims, as we later discuss.

Additionally, Madden argued that SBU had not adequately pleaded its damages under the oral contract. At oral argument, Madden added that terms of the written contract—specifically its integration clause (the contract "constitutes the entire agreement of the parties and no oral or written communication or agreement of any kind is binding upon the parties") and a provision requiring written modifications signed by all parties—precluded any subsequent agreements between the parties.

SBU objected to Madden's introduction of evidence outside the pleadings and asked the court to make its determination within the four corners of the pleading, arguing that it adequately pleaded facts to support each element of its counterclaims. SBU argued further that there were various questions of fact that would be more appropriately determined at summary judgment: (1) whether Madden's insurance policy actually covered the operations performed by SBU, (2) whether the workers provided by Madden were temporary or leased and the lack of contemporaneous documentation required by statute to establish that they were temporary, and (3) whether Madden was operating as a worker leasing company. SBU argued that those factual issues were relevant to the existence of their oral contract and whether Madden performed under either the written or the oral contract. SBU argued further that the holding in *Mayfly* is not applicable to SBU's counterclaims because SBU did not seek to have either the oral or written contract invalidated on the basis of Madden's alleged failure to be appropriately licensed.

The trial court entered an order stating: "This Court finds on the face of the pleadings and matters of which the Court may take judicial notice that the subject workers were insured through [Madden] for workers' compensation insurance and finds that there was no enforceable oral contract between the parties." The court struck "all allegations relating to Defendants' claim that Plaintiff was not licensed or that Plaintiff allegedly failed to procure or provide workers' compensation insurance." The order also permitted SBU to continue to litigate the issue of benefits that Madden allegedly failed to provide to the workers, even

though SBU had sought the cost of the workers' employee benefits as part of its counterclaim for breach of contract.

The basis for the trial court's ruling is unclear from the record. Because the court concluded that there was no enforceable oral agreement, the court probably was convinced by Madden's argument, reiterated on appeal, that the integration clause of the contract precluded any subsequent oral agreement. The other part of the court's ruling on the motion to dismiss appears to assume that, even if there was an oral agreement, Madden did not breach it because Madden, in fact, had insurance coverage for the workers.[2] We review the court's ruling for legal error, giving SBU the benefit of all favorable inferences that may reasonably be drawn from the allegations in their counterclaims. *Simons v. Beard*, 188 Or App 370, 377, 72 P3d 96 (2003).

Apart from its argument based on the written contract's integration clause and the provision that modifications had to be in a signed writing, Madden did not advance an argument that SBU's allegations supporting its breach of contract counterclaim established that the oral agreement was unenforceable. To the extent that the trial court assumed when deciding the motion to dismiss that the oral agreement was an attempted modification of the parties' written contract, contrary to the allegations of SBU's counterclaim, that was error.

Judgment on the pleadings is appropriate "only if the allegations, when taken in their entirety and viewed in the light most favorable to the plaintiff, affirmatively establish that the plaintiff has no claim." *Curtis v. MRI Imaging Services II*, 327 Or 9, 16, 956 P2d 960 (1998). Here, the trial court did not analyze the pleadings to determine whether

---

[2] The benefits issue that remained was not an independent factual basis for any of SBU's counterclaims. The order on the motion to dismiss also had an impact on the scope of discovery during the subsequent course of the litigation. For example, SBU attempted to issue subpoenas seeking information from the Oregon Construction Contractors Board and the Oregon Bureau of Labor and Industries about Madden's licensing and insurance. Madden moved to quash the subpoenas, arguing that the trial court's dismissal of claims relating to the oral contract, failure to be licensed, and provision of workers' compensation meant that all issues of Madden's licensure, the provision of temporary workers or leased workers, and the provision of benefits "are no longer part of this case." The court agreed and quashed the subpoenas.

the facts alleged were sufficient to make out SBU's claims; rather, its order set out a factual determination that Madden was insured and rejected SBU's allegations concerning the existence of a separate oral agreement between the parties.

SBU's counterclaim put into dispute the appropriate scope of the written contract, which requires an analysis of terms of the contract and any ambiguous provisions therein. If, as SBU claims, the correct construction of the written contract limits its scope to the provision of temporary workers as defined by ORS 656.850, then its integration clause would not apply to a subsequent agreement to provide leased workers. Implicitly, the court decided the issue of what the parties intended through the written contract. In light of SBU's claim that the parties intended the written contract to cover only temporary workers, the trial court's ruling in Madden's favor at the motion to dismiss stage of the litigation was improper.

Further, the trial court erred in considering evidence outside the pleading, over SBU's objection. "If it is necessary for the court to refer to evidence outside the pleadings to decide the motion, the court cannot decide the matter 'on the pleadings,' and the motion must be denied." *Thompson v. Telephone & Data Systems Inc.*, 130 Or App 302, 309, 881 P2d 819, *adh'd to as modified on recons*, 132 Or App 103, 888 P2d 16 (1994); *accord Kelly v. Olinger Travel Homes, Inc.*, 200 Or App 635, 641, 117 P3d 282 (2005), *rev den*, 340 Or 308 (2006). The court should not have considered the proffered evidence of Madden's insurance coverage.

## THE MOTION FOR SUMMARY JUDGMENT

We state the facts relevant to Madden's summary judgment motion in the light most favorable to defendants, the nonmoving parties. ORCP 47 C. Madden is a licensed contractor in Oregon and Washington and provided temporary workers for others for construction projects. In August 2017, the parties entered into a written form contract, which Madden drafted. The contract states that Madden is an employee staffing company that is providing workers to SBU on a temporary basis pursuant to ORS 656.850 and

OAR 436-050-0420, with payment due no later than 10 days from the date of each invoice. It provides that Madden's employees are assigned to SBU on the basis of a particular job description and may not change jobs or job duties without prior written approval from Madden. According to the contract, SBU was to determine the start and end date of each assignment. The contract also contained a provision allowing the prevailing party in a lawsuit to recover its reasonable attorney fees. Finally, the contract contained a personal guaranty signed by Bentley, which contained its own attorney fee provision.

In September 2017, SBU received a letter from Barrett Business Services that stated that Barrett would no longer provide services to SBU and that they would process a final payroll on September 22, 2017. SBU would then have 30 days to obtain and provide notice of their new workers' compensation insurance.

According to SBU, Madden and SBU then came to an oral agreement that Madden would lease workers to SBU and provide workers' compensation insurance for them. Bentley then instructed his workers at SBU to sign up with Madden. A job order was created at Madden at that time that noted that Barrett was no longer working with SBU and that "Derek [Bentley] would like to utilize our services for projects—current and future." Under that arrangement, Madden no longer provided its own workers to SBU on an as-needed basis. Rather, Madden began handling the payroll and other administrative tasks for SBU's regular workforce. According to SBU, when Madden agreed to take on SBU's workers and SBU's regular workforce signed up with Madden such that Madden would handle the payroll and administration of SBU's regular workforce indefinitely, the services Madden provided changed. SBU's claim is that at that point, Madden was administering SBU's regular workforce and leasing them back to SBU and thus was not providing workers as temporary labor pursuant to the written contract. Madden disputes much of SBU's version of what happened.

In spring 2018, SBU fell behind on its payments. The parties communicated about SBU's failure to pay.

Madden then filed suit, relying in part on the written contract and seeking to recover over $74,000 in unpaid invoices submitted to SBU between April 30 and June 22, 2018.

SBU moved for summary judgment on Madden's claim against SBU for breach of the written contract and on Madden's claim against Bentley to enforce the personal guaranty. SBU argued that because Madden could not prove that the workers it supplied were temporary workers within the meaning of the statutes and regulations that were incorporated into the contract's terms, it could not prevail on its claims. The trial court denied SBU's motion regarding Madden's breach of contract claim. The court explained that *Mayfly* stands for the proposition that there is no private right of action to enforce the distinction between leased and temporary workers and that, because Madden provided labor and SBU was required to pay for that labor, Madden was entitled to pursue its breach of contract claim and SBU was not entitled to summary judgment on the written contract.

Madden filed its own motion for summary judgment on all of its claims, including for breach of contract and the personal guaranty. It argued that the written contract was enforceable under *Mayfly,* that Madden had provided labor, and that SBU's obligation to pay for that labor was unconditional. Madden further argued that the distinction between temporary and leased labor was irrelevant to its claims and pointed to evidence in the record showing that SBU did not raise that distinction with Madden in their communications regarding the unpaid invoices. As relevant here, the court granted Madden's motion for summary judgment on its breach of contract and personal guaranty claims.

SBU assigns error to the court's entry of the general judgment and award of attorney fees, as well as the denial of SBU's motion for partial summary judgment and the grant of Madden's motion for summary judgment. In their briefs on appeal, both parties ask us to construe the language of the written contract in their favor. Whether a contract provision is ambiguous is a question of law, but the meaning of an ambiguous contract provision is a fact issue. *Serles v. Beneficial Oregon, Inc.*, 91 Or App 697, 699, 756 P2d

1266 (1988). We do not believe that the trial court addressed whether the written contract was ambiguous, and we decline the parties' invitation to interpret the contract.[3]

Instead, as we view its ruling, the trial court decided a disputed factual issue—the intended scope of the contract—in granting Madden's motion for summary judgment. The court's determination concerning the scope of the written contract was based, again, on a misapprehension of the holding in *Mayfly* and its relevance to the arguments the parties were making in this case. Because of the trial court's legal error, which resolved a disputed factual issue, its rulings granting Madden's motion for summary judgment and entering judgment in Madden's favor are in error.[4]

In relevant part, the dispute between the parties is a factual one: whether the labor that was provided in April to June of 2018 was provided within the scope of the written contract. In other words, in SBU's view, the written contract governed Madden's provision of only temporary labor to SBU, and, in Madden's view, the written contract governed the provision of all labor to SBU, no matter whether the workers were characterized as temporary or leased labor. At oral argument, the trial court proceeded on the premise that the issue of whether the workers were temporary or leased was irrelevant, based on its misunderstanding of *Mayfly*. In the trial court's view, SBU could not assert a cause of action against Madden for its failure to be licensed as a worker leasing company, and the workers' classification was a collateral issue anyway, because it would not affect the amount of damages that Madden would be entitled to

---

[3] However, to the extent the trial court concluded that the contract's integration clause unambiguously precluded SBU's oral contact counterclaim, the trial court misunderstood what an integration clause is. "An integrated agreement is one that the parties intended to be a final expression of some or all of the terms of the agreement" when the parties entered into the agreement. *Abercrombie v. Hayden Corp.*, 320 Or 279, 287, 883 P2d 845 (1994). SBU does not claim that the parties had a prior oral agreement. SBU claims that, due to changed circumstances, it reached a separate oral agreement with Madden for Madden to provide leased workers once its established business relationship with a worker leasing company was terminated *after* the parties had entered into the written contract.

[4] For the same reason, we decline SBU's invitation to reverse the trial court's denial of its own motion on the basis that the written contract unambiguously covers only Madden's provision of temporary workers and not leased workers.

recover. Through those legal determinations, the trial court resolved the dispute in Madden's favor by rendering the question of whether the workers were temporary or leased irrelevant to the dispute.

As an initial matter, we note that even if the amount of damages Madden is entitled to recover is not affected by invoices representing labor provided by temporary or leased workers, that classification may bear on whether the contract applies to the supplied workers and whether Madden prevails on an equitable theory rather than under the contract. If Madden cannot prevail on its contract claim, the contract's terms would not apply. That would, in turn, affect the potential scope of defendants' liability. For example, defendant Bentley would contend that he is not personally liable as a result of the guaranty contained in the written contract if SBU did not breach that contract.

Furthermore, our holding in *Mayfly* does not render the issue of worker classification irrelevant to this dispute. That case stands for the proposition that a contract may be enforceable even when one of the contracting parties is not properly licensed. The enforceability of the written contract on that basis is not at issue here; rather, the dispute centers on the intended scope of the written contract and whether the parties' performance was under that written contract or a later oral contract. The classification of the workers, Madden's licensure, and the workers' compensation insurance that it carried are factual issues that are relevant to those determinations.

In sum, the trial court erred in dismissing SBU's counterclaim for breach of contract. The trial court also erred in granting Madden's motion for summary judgment on its claims for breach of contract and to enforce the personal guaranty. As a consequence, the trial court erred in entering a general judgment in favor of Madden and a supplemental judgment awarding attorney fees to Madden.

Reversed and remanded.